# EXHIBIT J

VIRGINIA:
IN THE CIRCUIT COURT FOR THE COUNTY OF HENRICO

DEVIN G. NUNES, )
    Plaintiff, )
)
v. ) Case No.: CL19-1715-00
)
TWITTER, INC., *et al.*, )
)
    Defendants. )

## MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Specially-Appearing Defendant Twitter, Inc. ("Twitter") submits this Memorandum in Support of its Motion for Protective Order.[1]

### INTRODUCTION

As explained in Twitter's pending motion to dismiss, this case does not belong in a Virginia court. The sole Plaintiff is Congressman Devin Nunes, a California resident and a member of Congress representing California's 22nd Congressional District, and his claims against Twitter, a Delaware corporation headquartered in California, concern allegedly defamatory Tweets that Plaintiff alleges cost him votes in his last election in California and interfered with his official work in Washington, D.C. These claims have a vanishingly small connection to Virginia and must be dismissed for three reasons: *first*, this Court lacks personal jurisdiction over Twitter; *second*, a binding forum selection clause requires the claims against Twitter to be brought in California; and, *third* and in the alternative, forum non conveniens principles establish that Virginia is an inconvenient forum.

---

[1] Twitter files this motion by special appearance. Because this motion challenges only Plaintiff's authority to conduct jurisdictional discovery (or other discovery during the pendency of Twitter's motion to dismiss for lack or personal jurisdiction and other procedural defects), it is "unrelated to adjudicating the merits of the case" and therefore "does not waive any objection to personal jurisdiction." Va. Code § 8.01-277.1(B).

1

A hearing on Twitter's motion is set for August 23, 2019. But rather than wait for resolution of that dispositive motion, Plaintiff sent Twitter on June 24, 2019 a dozen interrogatories and sixteen requests for production, seeking, among other things, extensive information about the details of any and all of Twitter's business operations in Virginia over the past five years and the identities of all Twitter users who reside or work in Virginia. These sprawling discovery requests put the cart before the horse. A protective order excusing Twitter from having to respond to the requests should issue for three independent reasons.

*First*, in the face of Twitter's challenge to personal jurisdiction, Virginia law required Plaintiff to overcome two hurdles *before* seeking any discovery, including jurisdictional discovery. As a procedural matter, Virginia law required Plaintiff to obtain advance authorization from this Court for any jurisdictional discovery. And as a substantive matter, Virginia law required Plaintiff to make a prima facie showing of personal jurisdiction over Twitter based on the allegations in his Complaint. But Plaintiff sought no authorization from this Court and, as Twitter's pending motion demonstrates, the allegations in his Complaint fail to establish a prima facie showing of personal jurisdiction. Plaintiff's discovery requests are therefore invalid.

*Second*, the discovery requests are entirely irrelevant to dispositive issues presented in Twitter's pending motion to dismiss and so would in no way assist the Court in resolving that motion. On their face, none of the requests have anything to do with the binding forum selection clause that makes venue improper in Virginia and requires Plaintiff to bring his claims, if at all, in California. And Twitter's challenge to personal jurisdiction is *legal*, not *factual*; it accepts as true all of Plaintiff's non-conclusory factual allegations, including those that Plaintiff now seeks to flesh out via discovery, and challenges only Plaintiff's legal theory of personal jurisdiction. As a result, none of the requests can or do "relate[] to adjudicating [Twitter's] objection" to personal

jurisdiction. Va. Code. § 8.01-277.1(B)(3). Under these circumstances—where a dispositive motion is pending that does not depend on any disputed facts—the Virginia Supreme Court has recognized that it is appropriate to suspend discovery pending resolution of the motion under Rule 4:1(c) of the Rules of the Supreme Court of Virginia.

*Finally*, Virginia's comprehensive unmasking statute and the federal First Amendment each independently bar several of Plaintiff's discovery requests that seek to pierce the anonymity of individual Twitter users. It is well-established that the First Amendment protects the right of internet users to speak anonymously, and that a request to unmask an anonymous user infringes that right. Virginia recognizes and protects that right through a comprehensive statute governing the procedures for discovery requests that would unmask anonymous internet users. Plaintiff's requests both failed to abide by Virginia's unmasking statute and would impinge on the First Amendment rights of Twitter's users to speak anonymously.[2]

## STANDARD OF REVIEW

The issuance of protective orders is governed by Rule 4:1(c) of the Rules of the Supreme Court of Virginia. Under this rule, a protective order may be granted upon motion and a demonstration of good cause. Va. Sup. Ct. R. 4:l(c). A protective order may be granted if "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*

---

[2] Twitter reserves the right to argue that the immunity provided to interactive computer services by section 230 of the Communications Decency Act, 47 U.S.C. § 230(c), which immunizes online platforms from liability and burdens of litigation relating to claims that treat them as publishers of third-party content, requires a stay of all discovery in this case pending adjudication of any immunity defense that Twitter may later assert under that statute.

3

## ARGUMENT

I. **Plaintiff Is Not Entitled To Conduct Discovery Now Because He Neither Sought Advance Authorization Nor Pleaded A Prima Facie Showing Of Personal Jurisdiction**

Plaintiff's discovery requests stumble out of the gate because he neither sought leave from this Court to propound jurisdictional discovery requests nor included in his Complaint allegations that could entitle him to conduct such discovery. As Virginia courts have recognized, once a defendant moves to dismiss based on a lack of personal jurisdiction, a plaintiff must seek leave of the Court before seeking jurisdictional discovery from the defendant. And in order for the plaintiff "to conduct jurisdictional discovery, [the] Plaintiff must have properly pleaded a prima facie showing of jurisdiction." *Dollar Tree Stores, Inc. v. Mountain Pac. Realty, LLC*, 86 Va. Cir. 206, at *1 (Va. Cir. Ct. 2013); *id.* ("before the [c]ourt will allow jurisdictional discovery," the plaintiff needs to "make a prima facie showing of jurisdiction"); *see also Abujaber v. Kawar*, No. 11514, 1990 WL 751058, at *1 (Va. Cir. Ct. Feb. 1, 1990) (noting that, during pendency of motion to dismiss for lack of personal jurisdiction, the court "*allowed* the parties to take discovery which could be considered ... in deciding that issue" (emphasis added)).

Virginia Code § 8.01-277.1 reflects the requirement that a plaintiff must obtain leave of the Court before seeking jurisdictional discovery in the face of a pending motion to dismiss for lack of personal jurisdiction. Section 8.01-277.1 provides that a party waives any challenge to personal jurisdiction by "conducting discovery," unless the discovery is "*authorized by the court*" and is "related to adjudicating the [jurisdictional] objection." Va. Code. § 8.01-277.1(A)(2), (B)(3). Because responding to Plaintiffs' requests may itself amount to "conducting discovery," advance authorization would be essential to ensuring that Twitter not inadvertently waive its objection to personal jurisdiction.

These procedural and substantive requirements mirror a similar practice in federal courts. As the U.S. Court of Appeals for Fourth Circuit has recognized, a district court properly denies jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions" in support of personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Instead, jurisdictional discovery is appropriate when a plaintiff has made "specific and substantive" allegations suggesting that the court has jurisdiction, *Mamo v. BP P.L.C.*, No. 1:05cv1323, 2006 WL 572327, at *2 (E.D. Va. Mar. 7, 2006), or when there are "significant gaps in the record" regarding the court's jurisdiction over the defendant, *Weinstein v. Todd Marine Enters., Inc.*, 115 F.Supp.2d 668, 676 (E.D. Va. 2000).

Plaintiff here failed to comply with either the procedural or substantive requirements for jurisdictional discovery. He did not seek or obtain advance authorization from this Court before propounding the requests. And as explained more fully in Twitter's pending motion to dismiss, his Complaint fails to allege a prima facie basis for concluding either that Twitter is "at home" in Virginia, such that *general* personal jurisdiction would be appropriate (Mem. 5-7), or that this suit arises out of any actions that Twitter took in or directed at Virginia, such that *specific* jurisdiction would be appropriate (Mem. 7-13). Both these failures warrant issuance of a protective order.

II. **This Court Should Also Suspend Discovery Pending Resolution Of Twitter's Motion To Dismiss Because Plaintiff's Requests Are Unmoored From The Issues Presented In That Motion**

Under Rule 4:1(d) of the Rules of the Supreme Court of Virginia, courts have broad discretion to "order[] that discovery on some or all issues in the action should be suspended" pending the resolution of a dispositive motion. As the Virginia Supreme Court has recognized, exercise of that discretion is particularly appropriate when a defendant has moved to dismiss all claims against it and discovery would not assist the Court in resolving that motion. *See Jared and Donna Murayama 1997 Trust v. NISC Holdings, LLC*, 284 Va. 234, 250 (2012) (rejecting

5

argument that circuit court erred in granting demurrer without permitting any discovery or investigation); *Dick Kelly Enters., Va. P'ship No. 11 v. City of Norfolk*, 243 Va. 373, 383 (1992) (similar).

That is precisely the case here. As an initial matter, Twitter has moved to dismiss on *three* independent grounds. Yet Plaintiff confirmed in meeting and conferring in connection with this discovery dispute that his discovery requests target only one of those grounds (personal jurisdiction), not the remaining two dispositive venue grounds (the forum selection clause and forum non conveniens). For example, as explained in Twitter's motion (*see* Mem. 13-15), the mandatory forum selection clause that Plaintiff agreed to as a condition of opening and maintaining two Twitter accounts requires disputes concerning Twitter's Terms or services (such as this one) to "be brought solely in the federal or state courts located in San Francisco, California." *See* Carome Decl. Ex. A at 2-14, Twitter Terms of Service ("Twitter Terms"). This clause makes Virginia an improper forum and requires dismissal under Va. Code. § 8.01-264. *See New Life Christian Church v. Dynabilt Tech. Int'l Corp.*, 59 Va. Cir. 399 (Va. Cir. 2002). Yet Plaintiff's discovery requests seek no information that remotely bears on the applicability of that mandatory forum selection clause.

As for the one issue that Plaintiff's discovery requests target—personal jurisdiction—the information Plaintiff seeks would not assist the Court in ruling on the particular objections that Twitter raises to jurisdiction. Twitter's jurisdictional challenge is a facial one, not a factual one. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (discussing distinction between facial and factual jurisdictional challenges). Accepting as true all non-conclusory allegations regarding Twitter's contacts with Virginia, Twitter's jurisdictional motion challenges not the *facts* alleged, but the *legal theory* upon which Plaintiff seeks to hale Twitter into a Virginia court.

6

Plaintiff's discovery requests—which largely seek information to try to substantiate factual allegations already in his Complaint—therefore do not "relate[] to adjudicating [Twitter's] objection" to personal jurisdiction. Va. Code § 8.01-277.1(B)(3).

Plaintiffs discovery requests seek some information that is not related to personal jurisdiction at all: Interrogatory 1 requests the identity and contact information for any person that is "likely to have discoverable information that Twitter may use to support any denial of the factual allegations and/or any defenses to the claims in Plaintiff's Complaint." Interrogatory 1. And interrogatory 2 asks Twitter to "identify each person who Twitter expects to call as an expert witness at trial." Interrogatory 2. These requests "relate[] to adjudicating the merits of the case," not "to adjudicating the [personal jurisdiction] objection," Va. Code § 8.01-277.1(A), (B)(3), and are thus plainly premature.

The remainder of Plaintiff's discovery requests seek information that would, at most, substantiate or add detail to factual allegations already contained in the Complaint—allegations that Twitter *does not dispute* for purposes of resolving its *legal* challenge to Plaintiff's theory of personal jurisdiction. Interrogatories 4, 5, and 6 and document requests 2, 3, 4, and 5 seek information related to Twitter's general business contacts with the state.[3] These requests could, at most, confirm the Complaint's allegations that Twitter has extensive business contacts with Virginia, "targets Virginians ... with advertisements," and "earns millions of dollars in revenues

---

[3] *See* Interrogatory 4 (seeking identity of all persons located in Virginia with whom Twitter conducted business); Interrogatory 5 (seeking records of all business activity between Twitter and Virginia users); Interrogatory 6 (asking Twitter to identify and describe all times it has been present in Virginia conducting business); Interrogatory 7 (asking Twitter to identify all advertising related to Virginia businesses or users); Document Request 2-3 (requesting various financial documents related to business transacted in Virginia); Document Request 4 (requesting documents related to any account in Virginia controlled or owned by Twitter); Document Request 5 (requesting contracts or agreements between Twitter and any person or business to be performed in Virginia); Document Request 7 (requesting all documents related to the conducting of any business in Henrico County).

7

from its Virginia source customers." Compl. ¶ 6. But no matter what details any responses to the requests might show, Twitter's challenge to personal jurisdiction would remain the same. It would remain the case that, whatever the extent of Twitter's business contacts with Virginia, those contacts are not so extensive, when considered against the entirety of Twitter's nationwide and worldwide activities, as to make Twitter "at home" in Virginia for purposes of asserting general jurisdiction. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-1559 (2017) ("the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts," but instead "calls for an appraisal of a corporation's activities in their entirety"); *see also* Mem. 5-7. Nor would any of the information sought bear on whether the Court has specific personal jurisdiction over Twitter: None of the requested information even concerns (much less targets) any Twitter business conduct that is *related to Plaintiff's claims*. *See* Mem. 7-13.

Interrogatory 3 requests information, including identifying information, about *all* of Twitter's Virginia users. *See* Interrogatory 3 (seeking identity of all Twitter users who reside or work in Virginia). Even aside from Plaintiff's failure to conform with Virginia's comprehensive unmasking statute and the requirements of the First Amendment, *see infra* Part III, this request again (at best) seeks only to substantiate an allegation that Twitter accepts as true for purposes of its motion to dismiss—that "millions of Virginians have Twitter accounts and use Twitter on a daily basis." Compl. ¶ 6. The identity of each of those "millions of Virginians" is not conceivably relevant to the jurisdictional challenge Twitter raises. Even if Plaintiff learned the identity of those "millions of Virginians," it would remain the case that Twitter's Virginia users represent only a small fraction of Twitter's total user base, defeating any argument that Twitter is essentially "at home" in Virginia. *See BNSF*, 137 S. Ct. at 1558-1559. And, of course, the identity of these millions of non-parties plainly has nothing to do with Plaintiff's specific claims and so cannot

8

possibly demonstrate specific personal jurisdiction over Twitter. Meanwhile, the burdens and interference with business interests that having to respond to this blunderbuss request would inflict on Twitter, and its intrusion into the privacy of persons wholly unrelated to this litigation, would be extraordinary.

Finally, Plaintiff requests information, including identifying information, about two anonymous co-defendants—the operators of Twitter accounts @DevinNunesMom and @DevinCow. As discussed in more detail below, those requests are improper because they fail to abide by Virginia's comprehensive unmasking statute and the requirements of the First Amendment. But the requests *also* are irrelevant to the jurisdictional challenge that Twitter raises. As Twitter explained in addressing the allegations against Defendant Liz Mair, who was a Virginia resident at all relevant times, "it is the defendant, not the plaintiff or *third parties*, who must create contacts with the forum State" in order to establish personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (emphasis added); *see also* Mem. 12-13. The "unilateral activity of a third party ... cannot satisfy the requirement of contact with the forum State" by the Defendant. *Walden*, 571 U.S. at 291. This defect in Plaintiff's case is—again—a legal one, and it applies regardless of whether Plaintiff can point to one, two, or three Virginia-based Twitter users. Because the mere presence of a Twitter user in Virginia could not subject Twitter to personal jurisdiction in the Commonwealth for any cause of action related to that user's conduct, the identities or locations of @DevinNunesMom and @DevinCow do not "relate[] to adjudicating [Twitter's] objection" to personal jurisdiction. Va. Code § 8.01-277.1(B)(3).

In sum, because none of Plaintiff's discovery requests would assist the Court in resolving the issues raised in Twitter's motion to dismiss, this Court should spare the Court and the parties the trouble and expense of engaging in discovery until after that motion is heard and decided.

9

### III. Virginia Law And The First Amendment Bar The Discovery Requests That Seek To Unmask Anonymous Twitter Users

Finally, both Virginia law and the First Amendment independently prohibit interrogatory 3 and document requests 9, 10, 11, and 12, which ask Twitter to unmask the identities of thousands and possibly millions of anonymous users by "[i]dentify[ing] *all* users of Twitter who reside or work in Virginia," and by providing extensive information about the operators of two particular anonymous accounts—@DevinNunesMom and @DevinCow—that have apparently incurred Plaintiff's wrath by criticizing him. *See* Interrogatory 3; Document Requests 9-12. Virginia law and the First Amendment bar these attempts to strip Twitter users of their anonymity.

It is well established that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). That right to remain anonymous is "guarded in all mediums of expression," including on internet platforms like Twitter. *Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 62 Va. App. 678, 691 (Va. Ct. App. 2014), *vacated on other grounds* 289 Va. 426 (2015); *see also Jaynes v. Commonwealth*, 276 Va. 443, 461 (2008). In fact, courts have recognized that anonymity is particularly important on online platforms such as Twitter: "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas" and therefore "must be carefully safeguarded." *Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088, 1092, 1097 (W.D.Wash.2001). And the right to speak anonymously is at its strongest where, as here, anonymous speakers are engaged in political speech about a public figure, *see Jaynes*, 276 Va. at 461 ("The right to engage in anonymous speech, particularly anonymous political or religious speech, is 'an aspect of the freedom of speech protected by the First Amendment.'" (*quoting McIntyre*, 514 U.S. 342)), and where that public

10

figure seeks to pierce the veil of anonymity "for no other reason than because [he] disagrees with" the anonymous speakers' viewpoint, *Yelp*, 62 Va. App. at 691.

Virginia's comprehensive unmasking statute, Va. Code § 8.01-407.1, was enacted specifically to protect the First Amendment rights of anonymous speakers on online platforms. It provides that "[i]n civil proceedings where it is alleged that an anonymous individual has engaged in Internet communications that are tortious, any subpoena seeking information held by a nongovernmental person or entity that would identify the tortfeasor shall be governed by" the procedures set out in the statute "unless more expedited scheduling directions have been ordered by the court upon consideration of the interests of each person affected thereby." Va. Code § 8.01-407.1. The procedures set out in section 8.01-407.1 require a party seeking identifying information to file with the circuit court supporting materials showing, *inter alia*, that "no motion to dismiss ... challenging the viability" of the underlying lawsuit is pending, that the requesting party "has a legitimate, good faith basis to contend that [he] is the victim of [actionable] conduct," that "the identity of the anonymous communicator is ... centrally needed to advance that claim," and that "other reasonable efforts to identify the anonymous communicator have proven fruitless." Va. Code § 8.01-407.1(A)(1). Those supporting materials must also be served with the subpoena on the entity from which the identifying information is sought (in this instance, Twitter), and that entity must then notify the anonymous communicators of the discovery request in order to allow them to intervene to object to the requested discovery. Va. Code § 8.01-407.1(A)(2)-(4).

Plaintiff is well aware of section 8.01-407.1's requirements: Plaintiff previously served Twitter with a subpoena for the identities of @DevinNunesMom and @DevinCow and then withdrew that subpoena after Twitter advised Plaintiff that he had failed to comply with Virginia's unmasking statute. Nonetheless, Plaintiff has *again* made no attempt to abide by any of these

11

procedures. In particular, he has not established that "no motion to dismiss ... challenging the viability" of the underlying lawsuit is pending—because, of course, such a motion is indeed pending. And he has filed no supporting material with the Court at all—let alone material showing that he has "a legitimate, good faith basis to contend that [he] is the victim of [actionable] conduct," that "the identity of the anonymous communicator is ... centrally needed to advance that claim," and that "other reasonable efforts to identify the anonymous communicator have proven fruitless." Va. Code § 8.01-407.1(A)(1). While Virginia's unmasking statute applies on its face to subpoenas, rather than discovery requests made to a party, there is no reason why naming an internet service provider as a defendant should automatically entitle a plaintiff to sidestep the comprehensive scheme set out in section 8.01-407.1—especially where, as here, the provider has filed a motion to dismiss showing that it is not even properly a defendant in the case. Plaintiff's failure to abide by section 8.01-407.1's requirements invalidates Plaintiff's attempt to unmask @DevinNunesMom, @DevinCow, and all Virginia-based Twitter users.

Moreover, even beyond section 8.01-407.1, the First Amendment independently limits Plaintiff's ability to unmask anonymous Twitter users. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (holding that discovery order requiring NAACP to disclose its membership list violated First Amendment). The First Amendment imposes three limits relevant here.

First, and most importantly, the plaintiff must show that their claims against the anonymous defendant are factually and legally viable by supporting his claim "with facts sufficient to defeat a summary judgment motion." *Doe v. Cahill*, 884 A.2d 451, 460 (Del. 2005); *see also Best Western Int'l., Inc. v. Doe*, No. CV-06-1537, 2006 WL 2091695, at *4 (D. Ariz. 2006) (adopting *Cahill* standard); *Mobilisa, Inc. v. Doe*, 170 P.3d 712, 720 (Ariz. Ct. App. 2007) (same); *In re Does 1-10*,

12

242 S.W.3d 805, 821 (Tex. Ct. App. 2007) (same). That means that the "plaintiff must submit sufficient evidence to establish a prima facie case for each essential element of the claim in question." *Cahill*, 884 A.2d at 463 (quotation omitted); *see also Mobilisa*, 170 P.3d at 720 (requiring "the requesting party to demonstrate it would survive a motion for summary judgment filed by Doe on all of the elements within the requesting party's control").

Second, the plaintiff must show that the information requested is necessary to advance his claims, including by identifying the exact statements purportedly made by each anonymous user that the plaintiff alleges constitutes actionable speech and by showing that there is no alternative means to obtain the information sought. *See, e.g., Doe I v. Individuals*, 561 F. Supp. 2d 249, 254-255 (D. Conn. 2008); *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760 (N.J. Ct. App. Div. 2001).

Finally, a plaintiff must undertake efforts to notify the anonymous user that his or her identity is subject to discovery and allow the anonymous user a reasonable opportunity to oppose the discovery request. *See, e.g., Doe I*, 561 F. Supp. 2d at 254; *Cahill*, 884 A.2d at 460-461; *Dendrite Int'l*, 775 A.2d at 760.

Plaintiff cannot satisfy any of these requirements here—especially at the pleading stage of the case before the Court has even heard or ruled on Twitter's challenges to personal jurisdiction and venue. Plaintiff has put forward no *facts* at all—let alone "facts sufficient to defeat a summary judgment motion," as the First Amendment requires. *Cahill*, 884 A.2d at 460. Nor has he attempted to explain how even the *allegations* in his Complaint are sufficient to survive a motion to dismiss against *any* anonymous user. Certainly, he has not established any kind of case against the *millions* of non-party Twitter users that he seeks to unmask. Plaintiff has likewise failed to show that no alternatives means exist to obtain the information sought. Plaintiff has not, for

13

example, detailed what other avenues he has pursued to try to ascertain the identity of @DevinNunesMom and @DevinCow. And as discussed above, *supra* 8-9, Plaintiff cannot establish that the identity of all Twitter users "who reside or work in Virginia" is even relevant to any issue in this case, let alone that such information is necessary to advance his claims.

Under these circumstances, a protective order is appropriate to protect these users, as well as Twitter itself, "from annoyance, embarrassment, oppression, or undue burden or expense." Va. S. Ct. R. 4:1(c). In any event, if this Court does not grant a protective order based on Twitter's present motion, it should, at a minimum, stay Twitter's obligation to respond to any of the "unmasking" and issue an invitation to all Twitter users in Virginia, as well as to the operators of @DevinNunesMom and @DevinCow, to intervene in this action so that they may, within a reasonable period of time, appear before this Court (in a manner that protects their true identities) and be heard on these issues.

## CONCLUSION

For the reasons set forth above, Twitter respectfully requests that the Court enter a protective order barring Plaintiff from seeking discovery from Twitter at least until after the Court has ruled on Twitter's Motion To Dismiss.

Dated: July 22, 2019

Respectfully submitted,

TWITTER, INC.

By: *Elizabeth Turner* (signature)

Charles K. Seyfarth (VSB No. 44530)
Elizabeth Scott Turner (VSB No. 88056)
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7137
Facsimile: (804) 403-7110
cseyfarth@ohaganmeyer.com
eturner@ohaganmeyer.com

Patrick J. Carome
Ari Holtzblatt
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com

*Counsel for Specially-Appearing Defendant Twitter, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of July, 2019, I caused a true and accurate copy of the foregoing to be served by First Class United States Mail, postage prepaid, on the following:

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
stevenbiss@earthlink.net

*Counsel for Plaintiff Devin G. Nunes*

Amy Neuhardt
Karen L. Dunn
Boies Schiller Flexner LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 274-1137
Facsimile: (202) 237-6131
aneuhardt@bsfllp.com
kdunn@bsfllp.com

Roberta A. Kaplan
Joshua Matz
Benjamin Margo
Kaplan Hecker & Fink LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jmatz@kaplanhecker.com
bmargo@kaplanhecker.com

*Counsel for Defendants Elizabeth A. Mair and Mair Strategies LLC*

/s/ Elizabeth Scott Turner
Elizabeth Scott Turner (VSB No. 88056)
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7137
Facsimile: (804) 403-7110
eturner@ohaganmeyer.com