IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| In Re Subpoena to Twitter, Inc. | ) | <u>Misc. Case No. 3:20-mc-00003-GEC</u> |
| | ) | |
| | ) | |
| TREVOR FITZGIBBON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Action currently pending in the |
| | ) | U.S. District Court, E.D. Va. |
| | ) | (Case 3:19-cv-477-REP) |
| JESSELYN A. RADACK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# <u>MEMORANDUM IN OPPOSITION TO<br>TWITTER'S MOTION TO QUASH SUBPOENA</u>

Plaintiff, Trevor Fitzgibbon, by counsel, pursuant to Local Civil Rule 11(c)(1), respectfully submits this Memorandum in Opposition to the motion to quash filed by Twitter, Inc. ("Twitter"). [*ECF No. 1*].

## I.  <u>INTRODUCTION</u>

The litigation process is – or should be – a search for the truth. *Littlewood v. Federal Realty Inv. Trust*, 2014 WL 6713468, at * 2 (Sup. Mass. 2014); *id. Bartsch v. Lage*, 2019 WL 166206, at * 6 (N.J. Super. 2019) ("The discovery rules are to be construed liberally and broadly to facilitate the search for the truth during litigation"); *Riley v. Goodman*, 315 F.2d 232, 234 (3rd Cir. 1963) ("We have long abandoned the adversary system of litigation which regards opposing lawyers as players and the judge as a mere umpire whose only duty is to determine whether infractions of the rules of the

game have been committed.  A trial is not a contest but a search for the truth so that justice may properly be administered.").  Obstruction, obfuscation and delay, such as we see from Twitter in this case, transforms litigation into a mere game and renders the entire judicial process – the search for the truth – futile and illusive.

Beginning in April 2019, Jesselyn Radack ("Radack") orchestrated a national and international smear campaign against Trevor Fitzgibbon ("Fitgibbon").  Radack located Twitter accounts with massive followings in the United States and accounts in Europe and Canada with ties to the progressive movement; she befriended and followed[1] those accounts; she used those accounts to expand the reach of her defamation and as an echo chamber to amplify her hurtful messages about Fitzgibbon; she and her confederates used Twitter to destroy Fitzgibbon's will and eliminate his ability to feed his family.  Radack coordinated her unlawful efforts with known and unknown Twitter users, including **@DevinCow**, **@RayJoha2**, **@UpTheCypherPunx**, **@Kaidinn**, and **@jimmysllama** – Twitter users known to harbor animus and ill-will towards Fitzgibbon and his counsel.

On December 21, 2019, Fitzgibbon served a subpoena on Twitter.  Fitzgibbon searches for the truth about Radack's motives, her ongoing breaches of contract, the full extent of her defamation, and her combination and coordination with other Twitter users to spread the vicious lies about Fitzgibbon.

---

[1]     Twitter provides a technology that facilitates mass defamation through republication.  Following someone on Twitter means a user is subscribing to their tweets as a follower, their tweets appear in the user's home timeline, and that person is able to send the user direct messages.  If someone follows a user on Twitter, that follower appears on the user's "followers" list, the follower sees the user's home timeline whenever they log into Twitter, and the follower can start a private conversation at any time.  [https://help.twitter.com/en/using-twitter/following-faqs].  Radack is thoroughly versed in Twitter's technology and architecture.  Radack follows and is followed by the users/accounts named in Fitzgibbon's subpoena.

## II.  <u>BACKGROUND</u>

The litigation between Fitzgibbon and Radack has a long history.  It is important to understand that history because it explains Radack's lack of candor, her disrespect for the District Court and the Federal Rules, her extreme animus towards Fitzgibbon, her use of Twitter as a weapon, and her current efforts to coordinate attacks on Fitzgibbon with the Twitter users that are the subject of Fitzgibbon's subpoena.

Fitzgibbon was born in Lynchburg, Virginia.  He provides domestic and global public relations and communication strategy for clients in Virginia and elsewhere. Fitzgibbon's clients include whistleblowers, authors, artists and activists.  In November and December 2015, Fitzgibbon had an affair with Radack.  Radack is a high-profile strategist, advisor/confidant and lawyer to prominent whistleblowers and leakers, including Edward Snowden ("Snowden"),[2] Thomas Drake,[3] John Kirakou,[4] Peter Van Buren,[5] Said Barodi,[6] and, most recently, Daniel Hale ("Hale").[7]  The consensual tryst

---

[2]     *United States v. Snowden*, Case 1:13-cr-265 (CMH) (E.D. Va.) (pending).

[3]     *United States v. Drake*, RDB-10-0181; *Wiebe et al. v. National Security Agency et al.*, Case 1:11-cv-03245-RDB (D. Md.).

[4]     *United States v. Kiriakou*, Case 1:12-cr-00127-LMB (E.D. Va.).

[5]     Peter Van Buren ("Van Buren") is a retired Foreign Service Officer.  The State Department stripped him of his security clearance and charged him with eight (8) violations State Department policy, including linking in his blog to documents on WikiLeaks; displaying a "lack of candor" during interviews with diplomatic security officers; and leaking allegedly sensitive and classified information in his book. https://www.washingtonpost.com/blogs/federal-eye/post/state-dept-moves-to-fire-peter-van-buren-author-of-book-critical-of-iraq-reconstruction-effort/2012/01/31/gIQAiXNSCS_blog.html?utm_term=.692f2cc404a8; https://wemeantwell.com/blog/the-author/].

[6]     Barodi is a former FBI analyst who was terminated in 2017.

[7]     *United States v. Hale*, Case 1:19-cr-00059-LO (E.D. Va.) (pending).

between Fitzgibbon and Radack is graphically evidenced by and captured in a tell-all text message chain that features, *inter alia*, nude selfies taken by Radack and texted to Fitzgibbon. [*See Case 3:18-cv-247-REP (Document 60, ¶¶ 15-24*].

In March 2016, Radack did the unthinkable.

Radack and her attorney at the time, Gloria Allred ("Allred"), went to the District of Columbia Police and falsely accused Fitzgibbon of rape and sexual assault.[8]

Radack's criminal complaints against Fitzgibbon were referred to the United States Attorney for the District of Columbia.  On April 20, 2017, after more than a year of investigation, the United States Attorney closed all investigations and complaints and announced that it declined to prosecute Fitzgibbon.  The United States Attorney dropped the charges against Fitzgibbon because, in truth, as the text messages and selfies prove, there was no rape or sexual abuse.  Radack fabricated the criminal charges to protect her self-interest and further her agenda and career as a prominent lawyer for whistleblowers and leakers throughout the country.

Radack is not what she seems to be.  She does not behave like an attorney.  She behaves as if she is a political operative or an undercover government agent.  Radack openly, proudly and publicly admits that she uses "**drug dealer tactics**" in her representation of whistleblowers and leakers:

---

[8]       Significantly, Allred, a notorious publicity-seeker, never gave a single press conference and never took any legal action against Fitzgibbon on behalf of Radack.



[https://www.youtube.com/watch?v=YlslSkDOPrI].   She meets with people in person. She pays in cash, and she uses "burner phones".   She admits to having "multiple computers, including an air-gapped computer that's not hooked up to the Internet, so that I can use encrypted communications if we're not able to meet in person." [*Id.*].   Radack admits that she uses encrypted messaging services, including Signal,[9] to cloak and hide her communications with third-parties.   It is virtually impossible to get any useable evidence from Radack.   She ignores evidence preservation obligations and spoliates evidence of her communications.

Radack is a sophisticated and prolific user of Twitter.   She conducts her business, including advertising her services to clients and prospective clients in Virginia, by and through Twitter.   She operates Twitter account, **@JesselynRadack**.   She has over 36,500 followers.   Radack is methodical.   Her Twitter profile once read as follows:

---

[9]      "Signal" allows a user to send high-quality group, text, voice, video, document, and picture messages anywhere in the world.   Messages and calls are completely encrypted.   "We can't read your messages or see your calls, and no one else can either."   Signal allows a user to save messages or schedule "disappearing message intervals for each conversation". [https://signal.org/].



In late June 2019, after Fitzgibbon filed suit against her for a second time (*supra*), Radack changed her Twitter profile to falsely suggest that her retweets and likes were not endorsements of the defamatory content:



After the United States Attorney dropped the charges against Fitzgibbon, Radack commenced an unprecedented defamation campaign against Fitzgibbon using Twitter to savagely disparage Fitzgibbon.

### A.   *Fitzgibbon v. Radack – The First Action*

On April 13, 2018, Fitzgibbon filed an action against Radack in the United States District Court for the Eastern District of Virginia. [*Case 3:18-cv-247-REP*].  In a second amended complaint, [Document 60], Fitzgibbon alleged claims of malicious prosecution, defamation, insulting words, abuse of process, and common law conspiracy.  Fitzgibbon sought money damages in the sum of $10,350,000.00 as a result of Radack's malicious prosecution, defamation, conspiracy and other wrongdoing.  Radack's conduct during the case was atrocious.  In spite of a demand to preserve evidence, Radack intentionally deleted from her Twitter account all the false and defamatory tweets she had made about Fitzgibbon.  Radack's mother, Janet Wood Brown, also deleted one of the defamatory tweets at issue in the action.  Radack misrepresented rulings of the District Court on Twitter and used Twitter to cast asperions and publish derogatory comments about Judge Leonie Brinkema and Supreme Court Associate Justice Clarence Thomas.  Radack submitted a false declaration in which she represented that:

> 4.  I suffer from Multiple Sclerosis, and as a result I am often fatigued and in pain. Because of this condition, I would not be able to drive to Richmond. Traveling several hours from my home would be painful and physically difficult for me.

[Document 16-2].  In spite of her declaration, Radack travelled to Toronto, Canada, on May 16, 2018, to speak at a human rights conference and appeared on stage for a panel

discussion for ***over an hour***, sat in a chair, and spoke with absolutely no difficulty whatsoever:



[https://www.youtube.com/watch?v=GAe-PeEgv8w].  She was photographed afterwards drinking beer with her long-time associate, Bailey Lamon (**@UpTheCypherPunx** – person with purple hair) as part of the publicity for the conference:



In spite of the pendency of Case 3:18-cv-247-REP (the "First Action"), Radack continued to use her Twitter account – on an almost weekly basis – to publish and republish false and defamatory statements about Fitzgibbon.  She continuously tweeted, retweeted and "liked" (endorsed) defamatory statements about Fitzgibbon.   Radack referred to Fitzgibbon as an "unrepentant serial sexual harasser", a "notorious sexual predator", a "notorious misogynist", a stalker, "predatory", and a "rapist", *e.g.*:





unR̶A̶D̶A̶C̶K̶ted @JesselynRadack · 5h

Going thru something similar & it's utterly terrifying.

Jayne Miller ✓ @jemillerwbal

Woman who was stalked, harassed, sued, and scared away to another state by suspect in fatal shooting of 5 at Capital Gazette in Annapolis told me he became, for no obvious reason, "fixated" with her..caused her to move 3x, changed her name, and now sleeps with a gun.

💬 1          ⟲ 8          ♡ 14          ✉

Cathy L. Wright
@CathyLWright4

Replying to @JesselynRadack

Yes, it is.

9:18 AM · Jun 29, 2018



unR̶A̶D̶A̶C̶K̶ted
@JesselynRadack

Replying to @AnonScan @Credico2016 and 10 others

I've been very concerned about this too. I mentioned to Kevin Zeese (who coordinated DC's event) that I felt unnerved by the MAGA folks—and some notorious misogynists—were appropriating #ReconnectJ on social media. Zeese called me "ignorant"...which only proved my point.

6:19 PM · Jul 11, 2018





Radack's behavior showed actual malice for Fitzgibbon, and a desire to hurt him.

Radack went to extreme lengths during the pending litigation to search for and then

retweet (republish) a December 13, 2017 tweet by an "**Anmol Alphonso**" that included a

Facebook post of a lengthy (2+ hour) radio broadcast:



The radio broadcast was titled, "**Publicists for Predators**".  The hosts of the radio show, *inter alia*, repeatedly called Fitzgibbon a "rapist" and a "sexual predator".  [http://kpppfm.com/podcasts/a-mexican-crossing-lines-publicists-for-predators/].

Radack's ongoing defamation was intentional and premeditated.  She went to lengths to tag and involve others in her tweets, as she sought to spread the defamatory comments via Twitter.

**1.    _The Restraining Order_**

Radack's continuing defamation was so poisonous that the District Court granted Fitzgibbon's motion for a restraining order (the "Restraining Order").  The District Court restrained and enjoined Radack from, *inter alia*, using Twitter or directing or enticing others to use Twitter or any other social media during the pendency of the First Action to publish or republish statements about:

(a)    the character, credibility, or reputation of Fitzgibbon and/or his counsel;

(b)    the identity of a witness or the expected testimony of Fitzgibbon or any witness;

> (c)      the identity or nature of evidence expected to be presented in support of any motion or at trial or the absence of such evidence;
>
> (d)      the strengths or weaknesses of the case of either party; and/or
>
> (e)      any other information Radack knew or reasonably should know is likely to be inadmissible as evidence in this case and that would create a substantial risk of prejudice or confusion if disclosed.

[*Case 3:18-cv-247 (Document 41)*].

The United States District Court's Restraining Order did not deter Radack.

Radack and her agents continued to defame and disparage Fitzgibbon.   On January 18, 2019, while Radack pursued a sham bankruptcy, she republished a statement by confederate **@charliearchy**[10] that Fitzgibbon was a "serial sexual predator":



---

[10]      Many of the anonymous Twitter users who were involved in the mass defamation at issue in the First Action, including **@charliearchy**, continued to be involved with Radack in publishing false and defamatory statements after the parties settled the First Action.

In a February 8, 2019 tweet, Radack again referred to Fitzgibbon as a "predator":



On February 18, 2019, Radack falsely accusing Fitzgibbon of committing the crime of adultery with a well-known journalist and activist in Berlin, named Diani Barreto:



2.      *Contempt of Court*

On March 21, 2019, the United States District Court entered an Order to Show Cause   [*Case 3:18-cv-247-REP (Document 87)*] why Radack should not be held in contempt for violating the Restraining Order.

Radack conceded that her tweets violated the District Court's Restraining Order. Radack offered many excuses, however.

On April 26, 2019, the District Court held Radack in contempt.  In its Order, the Court specifically found that:

> Neither contrition nor emotional distress nor illness nor financial difficulties can excuse deliberate misconduct of this sort by any litigant, much less by a lawyer.  And, the record here shows that Radack is a sharp-tongued, mean-spirited, proliferous user of social media.  Her conduct here is just more of the same. Neither contrition nor emotional distress nor illness nor financial distress have caused Radack to ameliorate her penchant for nasty social media communication.

[*Case 3:18-cv-247-REP (Document 97, p. 3)*].

3.      *The Settlement*

In March and April 2019, after the District Court entered its Order to Show Cause, Radack made multiple representations to Fitzgibbon for the purpose of inducing Fitzgibbon to settle his claims against Radack and her employer, the Institute for Public Accuracy ("IPA"),[11] and release Radack and IPA from liability.  Radack represented that:

---

[11]      Fitzgibbon's claims against IPA were the subject of a separate action. [Case 3:19-cv-102-REP (E.D. Va.)].

- She would not tweet, retweet, reply, like or otherwise post anything on Twitter, Facebook, YouTube or any other social media platform, or any other print or media outlet, that mentions Fitzgibbon or that is of and concerning Fitzgibbon;

- She would not direct, request, encourage, entice, procure or otherwise cause any third party, including but not limited to any friends, colleagues, or clients, to tweet, retweet, reply, like or otherwise post anything on Twitter, Facebook, YouTube, any other social media platform, or any print or media outlet, that mentions Fitzgibbon or that is of and concerning Fitzgibbon;

- She would refrain from publishing, making, printing or communicating, electronically, orally, in writing, or in any other manner, to any third party (excluding her family members) or to the print or broadcast media, within social media of any nature, or on the Internet, any disparaging comments or words that would cause or contribute to Fitzgibbon being held in disrepute by the public.

Fitzgibbon foolishly believed Radack. He reasonably and justifiably relied upon Radack's representations. He agreed to settle the First Action, dismiss the First Action with prejudice, and release Radack and IPA from liability.

On April 9, 2019, Fitzgibbon signed a settlement agreement with Radack. Paragraph 4 of the settlement agreement contains the following material terms and conditions:

> a.    The Parties each covenant and agree that they will not tweet, retweet, reply, like or otherwise post anything on Twitter, Facebook, YouTube or any other social media platform, or any other print or media outlet, that mentions the other or that is of and concerning the other. For purposes of this Agreement, a statement is "of and concerning" a Party if the publication was intended to refer to him/her and would be so understood by persons reading it who knew him/her or if the publication was in its description or identification such as to lead those who knew or knew of the Party to believe that the statement was intended to refer to him/her.

b.      The Parties covenant and agree that they will not direct, request, encourage, entice, procure or otherwise cause any third party, including but not limited to any friends, colleagues, or clients of the other, to tweet, retweet, reply, like or otherwise post anything on Twitter, Facebook, YouTube, any other social media platform, or any print or media outlet, that mentions the other or that is of and concerning the other.

c.      In addition to the mutual affirmative covenants in paragraphs 4(a) and 4(b) above, each Party covenants and agrees that they will refrain from publishing, making, printing or communicating, electronically, orally, in writing, or in any other manner, to any third party (excluding family members) or to the print or broadcast media, within social media of any nature, or on the Internet, any disparaging comments or words that would cause or contribute to such Party being held in disrepute by the public.

d.      For purposes of this Agreement, "disparaging" means defamatory, derogatory, deprecating, detracting, and/or pejorative.  Nothing herein is intended to restrain or otherwise prohibit disclosures, communications, statements, or comments compelled pursuant to lawful order or process of a judicial, administrative, civil or criminal authority or proceeding.

Beginning on May 3, 2019 – exactly **one day** after the effective date of the settlement agreement – Radack and third parties acting in concert with her began to publish false defamatory and disparaging statements of and concerning Fitzgibbon:



17



unR̶A̶D̶A̶C̶K̶ted @JesselynRadack · 19h

Please unfollow me if you also follow @Millenial1706, bc you unwittingly become a conduit for this kind of abuse:

#FreeAssange ⏳ @... · 5/18/19
fuck all of you but first of all fuck you @jesselynradack

💬 3     🔁 1     ♡ 8     ⬆

💬 11     🔁 8     ♡ 18     ⬆

Randy Credico @Credico2016 · 17h
Wtf?

💬 3     🔁     ♡ 1     ⬆

@Kaidinn was suspended. Unity4J destroyer.
@vcruytldczsdfa

Replying to @Credico2016 @JesselynRadack and @Millenial1706

Yes Randy it's by the "movement" unity4j who are working for serial rapist Fitzgibbon to harass Jesselyn into silence what he did to her.  This is being spearheaded by Fitzgibbon, his girlfriend Diani, and unity4j's Suzie/Elizabeth/Caitlin/others.

8:31 PM · May 25, 2019 · TweetDeck

💬     🔁     ♡     ⬆

unR̶A̶D̶A̶C̶K̶ted @JesselynRadack · 2h
Replying to @vcruytldczsdfa @Credico2016 and @Millenial1706
Exactly.



**Llama #FreeAssange** @jimmysllama · 3h

> **Suzie Dawson** @Suzi3D · Apr 28
>
> Yes, **@ElizabethleaVos** broke major story after major story re **#Russiagate** incl Mifsud & gets nowhere near the level of credit she should for it from mostly male peers
>
> Spread some love for the ladies please? @MaxBlumenthal @aaronjmate @mtaibbi @ggreenwald
>
> > **Prefer Anonymous33** @PAnonymous33
> >
> > Replying to @ElizabethleaVos @Suzi3D
> >
> > So Elizabeth Vos was not only one of the first journalists to discover Mifsud's Western Intel Connections, she was also one of the first to show how Forensicator's work lines up with Assange's claims. Her Russiagate work is second to none at this point.

💬 2         ⟲         ♡ 1         ↑

**un~~RADACK~~ted**
@JesselynRadack

Replying to @jimmysllama

@ElizabethleaVos, a millennial who lives in her mom's basement in Arkansas, is an eager stenographer for a predator and a deranged Julian groupie.

11:05 AM · Jun 15, 2019 · Twitter for iPhone

 **unR̶A̶D̶A̶C̶Kted**
@JesselynRadack

I've been the victim of deepfakes—doctored vids, texts, images, etc—weaponized against me by a serial predator. Need to be criminalized.
huffpost.com/entry/deepfake... #



Here's What It's Like To See Yourself In A Deepfake Porn Video
There's almost nothing you can do to get a fake sex tape of yourself taken offline.
🔗 huffpost.com

11:29 AM · Jun 23, 2019 · Twitter for iPhone



**Leah McElrath** @leahmcelrath · 1h

Meanwhile, the anonymous Pepe the Frog MAGA account continues to harass and attack Barrett Brown by claiming he "illegally" has multiple accounts (which isn't "illegal" and Barrett doesn't have access to those accounts anymore):

> The following media includes potentially sensitive content.
> Change settings                                              View

💬 2        ↻ 14        ♡ 34        ↑

**un~~RADACK~~ted**
@JesselynRadack

Replying to @leahmcelrath

Same. My assailant set up an account to stalk & threaten me, my clients, family & friends. @Twitter did squat.

2:54 PM · Jun 23, 2019 · Twitter for iPhone



**Angelo Carusone** ✔ @GoAngelo · Jun 3, 2018

Sinclair's @SharylAttkisson did a full segment today defending widely recognized sexual harasser Trevor Fitzgibbon, dismissed the reports from *many* women, never once even featured a single statement from the women that came forward. Just defended a sexual harasser.

Show this thread

💬 23     🔁 106     ♡ 296     ⬆️

**General Sands** @MilitiaChief · Jun 19

@GoAngelo Julian Assange's PR man Trevor FitzGibbon contacted me recently. @Snowden's lawyer @JesselynRadack says he raped her. I met Sharyl Attkisson at Clinton's #whistleblower summit. I know for a fact @georgesoros funds Snowden, Manning & Assange. My name is General Sands.

🔗 https://fas.org/sgp/jud/manning/appeal-053116.pdf                1/26

USA v. Bradley (Chelsea) Manning: Army Court of Appeals affirms prior findings of guilt

**UNITED STATES ARMY COURT OF CRIMINAL APPEALS**

Before
CAMPANELLA, CELTNIEKS, and HAGLER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
Private First Class BRADLEY E. MANNING (nka CHELSEA E. MANNING)
United States Army, Appellant

ARMY 20130739

U.S. Army Military District of Washington
Denise R. Lind, Military Judge
Colonel Corey J. Bradley, Staff Judge Advocate (pretrial)
Colonel James R. Agar, II, Staff Judge Advocate (post-trial)

For Appellant: Vincent J. Ward, Esquire (argued); Captain J. David Hammond, JA;

💬     🔁 2     ♡ 1     ⬆️

**un~~R A D A C K~~ted**
@JesselynRadack

Replying to @MilitiaChief @SharylAttkisson and 3 others

Wrong on 3 counts. 1) He was never #Assange's "PR man," 2) Anyone can be an amicus on a brief, 3) Soros is not funding @Snowden or @xychelsea.

1:01 PM · Jun 26, 2019 · Twitter for iPhone



**B.** **_Fitzgibbon v. Radack – The Second Action_**

On June 28, 2019, Fitzgibbon filed an action against Radack in the United States

District Court for the Eastern District of Virginia for fraud in the inducement of the

settlement agreement, breach of contract, defamation, common law conspiracy, and other

torts. [_Fitzgibbon v. Radack_, Case 3:19-cv-477-REP].  Incredibly, the filing of this action

– the second action against Radack – did not deter Radack and her confederates from continuing to defame Fitzgibbon to Radack's clients, to Radack's Twitter followers, including **@DevinCow**, and to other Twitter users in Virginia and elsewhere.

        1.      **_How Twitter Facilitates A Conspiracy To Defame_**

       Radack knows exactly how Twitter works.  She and her confederates used the Twitter technology and architecture to republish and broadcast the defamation amongst themselves and to their followers.  There are multiple ways to communicate on Twitter. Radack took advantage of all of them.  A "tweet" is a message posted to Twitter containing text, photos, a GIF, and/or video.  A tweet appears on the sender's profile page and home timeline *and* on the home timeline of everyone who follows the sender. A "retweet" is a tweet that is shared publicly with a user's followers.  Retweets can be published with or without comment.  "Likes" are represented by a small heart and are used to show appreciation for a Tweet.  Likes appear on the sender's profile page and can be accessed by anyone simply by clicking or tapping into the Likes tab.  "Mentions" or "tags" are tweets that contain another account's username, preceded by the "@" symbol. For example: "Hello **@DevinCow**".  "Tagging" someone is a way of including them in a conversation.  Tags appear on the sender's profile page of public tweets *and* in the recipient's notifications tab *and* will appear on the recipient's home timeline view if the recipient of the tag follows the sender.  Anyone who follows the sender of a tag will also see the tweet in their home timeline.  A "reply" is when a user responds to another person's tweet.  Replies appear on the sender's profile page and in the recipient's notifications tab.  Like tags or mentions, replies also appear in the recipient's home timeline if they are following the sender.  A "thread" on Twitter is a series of connected

Tweets from one person.  With a thread the user can provide additional context, an update, or an extended point by connecting multiple tweets together.[12]

Twitter also permits users to engage in "non-public" conversations, called "direct messages" or "DMs".  Direct messages are exactly like private emails.  A user can start a non-public conversation or create a group conversation with anyone who follows that user.  Anyone who does not follow the user can send a direct message if the user has opted in to receive direct messages from anyone or if the user has previously sent that person a direct message.  To send a direct message, the user simply taps the envelope icon, types in a username, *e.g.,* **@DevinCow**, and adds text, photo, video, etc., and hits the airplane icon to send the message.  A group message can include up to fifty (50) people. [https://help.twitter.com/en/using-twitter/direct-messages].

After June 28, 2019, Radack and her agents continued to tweet, retweet, like, and tag each other in multiple tweets that not only breached the settlement agreement, but that contained false and defamatory statements of and concerning Fitzgibbon.  Radack intentionally tagged third-parties to include them in the despicable conversations about Fitzgibbon, and to entice them to retweet or reply.  Many times, including during the Christmas holidays, Radack was the only person to "like" a tweet by her confederates.  Radack and her agents, acting in concert and with a unified purpose – often as part of the same Twitter thread – continually promoted the same false statements or implications that Fitzgibbon was an abuser, an attacker, a stalker, an assailant, and like insulting words and falsehoods, *e.g.*:

---

[12]     [https://help.twitter.com/en/using-twitter/types-of-tweets; https://help.twitter.com/en/using-twitter/how-to-retweet; https://help.twitter.com/en/using-twitter/liking-tweets-and-moments; https://help.twitter.com/en/using-twitter/create-a-thread].




**unR̶A̶D̶A̶C̶K̶ted**
@JesselynRadack

Replying to @kittyhundal and @AnnieDarkhorse

8 ppl in this @Unity4J ad attacked me...but "only in their individual capacities." That argument's been rejected by every major legal system.



10:29 AM · Jul 28, 2019 · Twitter for iPhone

 **unR A D A C Kted**
@JesselynRadack

Hint to trolls:
- don't use alts w your kids pic
- don't use alts w your initials
- don't use alts named aft your fave '80s rock band
- don't wrap yourself in a @wikileaks cape aft #Assange disavowed you
- don't use alts to stalk women
- don't f*ck w/ the crypt-literate



12:41 PM · Aug 5, 2019 · Twitter for iPhone

 **unR A D A C Kted**
@JesselynRadack

Replying to @Vice16176094 @GiveBackTheAcct and 7 others

That is false. As a survivor and victim advocate, I would never engage in or endorse stalking. Cease and desist with this defamation.

12:26 PM · Sep 3, 2019 · Twitter for iPhone



**Llama** @jimmysllama · Dec 24, 2019

Just to be clear, #Unity4J Trevor Fitzgibbon didn't just subpoena the Twitter DMs of myself, journalists, whistleblowers, @RayJoha2 and @YourAnonNews in a battle to destroy whistleblower attorney @JesselynRadack and her family - he's trying to dox all of us through lawfare.

**Load images**

143 KB

💬 2          🔁 9          ♡ 11          ⬆️

**Devin Nunes lawyer subpoenad** @Kaidinn's 4 accounts
@WhoPaysBiss

Replying to @jimmysllama @RayJoha2 and 2 others

1/  There are others also dragged into this that doesn't fit under journalist or whistle-blowers such as myself, @UptheCypherPunx, @NoxFemme, and others.  Typical from u when trying to ride coattails.  What are u complaining about anyway I'm sure you were told prior unlike me.

8:22 PM · Dec 27, 2019 · Twitter Web App



No one forced Radack to tweet or to tag **@DevinCow** or **@RVAwonk** or **@AdamParkhomenko**.  Radack chose to breach the settlement agreement and to defame Fitzgibbon to these third-parties.  She chose to follow these accounts and she chose to tag them in tweets that were none of their business.  Radack made this case the business of **@DevinCow** and many, many other third-parties.  She chose to broadly tag Twitter users with massive followings, such as **@DevinCow**, because she wanted to increase the audience and, therefore, exacerbate the pain and suffering she inflicted with each foul tweet:



As Radack's own tweets demonstrate, Radack intentionally mentioned or tagged **@DevinCow** and other anonymous users repeatedly in tweets that violated the settlement agreement and constitute defamation.  The user or users operating these Twitter accounts, including **@DevinCow**, are witnesses to Radack's wrongdoing.  Fitzgibbon is entitled as a matter of law to discover their identities so he can take their depositions in this case.

> **2.**   *Common Law Conspiracy*

In his second amended complaint filed in the Second Action against Radack, Fitzgibbon alleges that beginning in April 2019 and continuing through the present, Radack combined, associated, agreed or acted in concert with **@RayJoha2**, **@UpTheCypherPunx**, **@Kaidinn**, **@jimmysllama** (and with others unknown to

Fitzgibbon without discovery), for the express purpose of injuring Fitzgibbon in his business and reputation through the publication and republication of false and defamatory statements. Fitzgibbon contends that Radack and her co-conspirators, acting in concert, utilized Twitter, encrypted email and encrypted communications software [*e.g.*, https://signal.org/] to publish, republish and spread the defamation and character assassination.

There is an abundance of evidence that Radack is privately communicating with her co-conspirators and other third-parties about Fitzgibbon, and working together with these persons to defame Fitzgibbon. For instance, Radack provided Raymond Johansen, **@RayJoha2**, with a draft of her answer and counterclaim, which Johansen posted to the Internet together with defamatory statements about Fitzgibbon:



Johansen has also republished multiple false and defamatory statements about Fitzgibbon that were originally published by Radack in May 2018, again showing concerted action between Radack and Johansen to harm Fitzgibbon, *e.g.*:



For over a year, anonymous Twitter account, "**@Kaidinn**" has relentlessly tweeted false and defamatory statements about Fitzgibbon, following the same theme and message as Radack, Johansen, Lamon, and **@jimmysllama**, *e.g.*:



**"a door appearing closed doesn't mean it's locked"**
@Kaidinn

Caitlin was squealing like a pig 2 weeks ago when someone didn't believe her lies about being "raped." She works for a SERIAL RAPIST and does favorable PR for him which includes the harassment and smear campaign targeting Snowden's attorney Jesselyn Radack who he raped.

10:32 PM · Apr 10, 2019 · Twitter Web Client

---



**@Kaidinn (an evil princess running a troll empire)**
@HatedByManyLOL

@JesselynRadack @RayJoha2 @AnonScan  Look into serial rapist Trevor Fitzgibbon being who created Unity4j and 1vs5i considering he's already funding them.  And his ShadowBox might have been what Unity4J was working for this entire time.

4:21 AM · Oct 27, 2019 · Twitter Web App

---

One iteration of the **@Kaidinn** Twitter profile[13] affirmed that the account was indeed "helping Radack":

---

[13]      The following Twitter accounts are associated with **@Kaidinn**: **@vcrutldczsdfa**; **@GiveBackTheAcct**; and **@HatedByManyLOL**.  There are also several others accounts that are associated with **@Kaidinn**, including **@WhoPaysBiss**, **@HowIsBissPaid**, and **@KaidinLOL**.



**@Kaidinn** admits in many tweets that she/he/it/them has been working with Radack for a "year" to defame Fitzgibbon:



Like Radack, **@Kaidinn** tags the same bad actors in her/his/it/their tweets, again showing concerted action amongst a specific group, *e.g.*:



**@Kaidinn** has also confirmed that **@jimmysllama** works with Radack in "exposing"

Fitzgibbon:



**Devin Nunes lawyer subpoenad @Kaidinn's 4 accounts**
@WhoPaysBiss

Replying to @sparrowmedia @JesselynRadack and 4 others

1/ Excuse me who told you that about JimmysLlama??
She and Radack are FRIENDS and IRL I read they met IRL.
She works for Jesselyn in "exposing" Fitzgibbon by
helping him targeting Fox who's a witness in the lawsuit
JimmysLlama threatened to sue last week.

4:52 PM · Jan 25, 2020 · Twitter Web App



**Devin Nunes lawyer subpoenad @Kaidinn's 4 accounts**
@WhoPaysBiss

UPDATE:  JimmysLlama continues biting hand that feeds
has put out the impression and also RT'd the tweet she's
an "influencer" with "NO CONNECTION" to Jesselyn
Radack.  You mean the woman you've been friends with
including IRL for years and helped her with Fitzgibbon??
#bunnysec

7:35 PM · Jan 25, 2020 · Twitter Web App



**#PirateParty #PPint #Piraten #GlobalPirates**
@WhoPaysBiss

Replying to @WhoPaysBiss @mmasnick and @sparrowmedia

JimmysLlama and Jesselyn have been friends for a year and a half.  They work together.  JL then RT'd that tweet without correcting it that she has direct contact with Radack.  JL isn't an "influencer" either considering I couldn't pull up any data about the reach of her site.

7:21 PM · Jan 27, 2020 · Twitter Web App

Importantly, Kaidinn confirms that **@Rayjoha2** and **@UpTheCypherPunx** are also involved in the "conspiracy":

> **Devin Nunes lawyer subpoenad @Kaidinn's 4 accounts**
> @WhoPaysBiss
>
> I can't remember last time I spoke to Bailey.  I'd tweet and dm Raymond in order to yell/poke him.  I had less interactions with Jesselyn than I did with Ray when I would send her archived tweets of people because she had many of them blocked.  But yeah a "conspiracy."
> #bunnysec
>
> ---
>
> **COUNT IV – COMMON LAW CONSPIRACY**
>
> 36.    Beginning in April 2019 and continuing through the present, Radack combined, associated, agreed or acted in concert with Raymond Johansen, Bailey Lamon, "@Kaidinn" (and with others unknown to Plaintiff without discovery), for the express purpose of injuring Fitzgibbon in his business and reputation through the publication and
>
> 25
>
> ---
>
> 6:26 AM · Jan 12, 2020 · Twitter Web App

The fact that Radack is engaged in private communications with third-parties about this case and about Fitzgibbon is clearly evidenced by multiple tweets – tweets that Radack posted and then summarily erased from Twitter.[14]  For instance, how would Radack know that **@DevinCow** received an "anonymous message that Peter Thiel may

---

[14]    It speaks volumes that Radack deleted all her tweets in which she tagged or retweeted **@DevinCow**.  Fitzgibbon took screenshots of some, but not all of the tweets.  Twitter has all of the tweets.

be funding the defamation lawsuits against **_us_**" [*emphasis added*], if Radack was not in direct contact with **@DevinCow** discussing the lawsuits?[15]



Radack also publicly discusses this lawsuit with **@DevinCow** and other Twitter users, *e.g.*:

---

[15]       Radack, **@DevinCow** and a host of other Twitter accounts have engaged in rampant and unnatural speculation for over a month about who is funding Fitzgibbon's lawsuit against Radack.



Radack's practices of engaging in direct messages (DMs) with third-parties is extremely well-documented, *see, e.g.*:



**Devin Nunes lawyer subpoenad @Kaidinn's 4 accounts**
@WhoPaysBiss

We?  I thought "creator of Q" wasn't working for and paid by Fitzgibbon.  But right after Defango and Jesselyn Radack dmd 3 days ago, Jesselyn makes ANOTHER deal with Fitzgibbon while keeping it from me with a guy who claims to have "NOTHING" to do with Fitzgibbon? #bunnysec

https://twitter.com/il1usiveman/status/1211772016803504130

**Danger Zone**
@il1usiveman

Replying to @WhoPaysBiss @JesselynRadack and @RayJoha2

Oh boy look who it is! Back to we've some new conspiracy theories? We already handled your little business and I'm sure if your friends actually care about what you're saying they will then share with you.

10:12 PM · Dec 30, 2019 · Twitter for Android

1 Retweet   2 Likes

**Welcome!**

Twitter just got lots of new features. You can personalize your color and the size of your text, as well as control your dark mode selection, right now.

Get started

7:11 PM · Dec 30, 2019 · Twitter Web App



**Danger Zone**
@dangerzonelive

Replying to @kittyhundal @RayJoha2 and @ARetVet

Good I sent raddack all my texts messages, emails, and messages with Trevor fitzgibbons that clearly shows he was asking people to leave her alone.people like us don't have anything to worry about because we've been 100% honest and transparent about this stuff.

5:00 PM · Jan 25, 2020 · Twitter for Android

Fitzgibbon's subpoena to Twitter triggered Radack and her co-conspirators.  **@Kaidinn** has admitted publicly that they had been "helping" Radack all along, *e.g.*:



"far better things ahead than any we leave behind"
@WhoPaysBiss

I have 4 accounts named.  JimmysLlama has ONE.  A whole lot of people are being targeted because we tried helping you Jesselyn.  WHY is this being left up to RAYMOND of all people?  I first found out by reading his timeline.  You didn't reach out to me. @JesselynRadack @RayJoha2

2:03 AM · Dec 29, 2019 · Twitter Web App



Raymond is a sociopath! He sets out to destroy!
@WhoPaysBiss

Obscene amount of time, work, and energy I put into working with Raymond on campaigns when we first met around Spring 2015.  While the past year I stuck my neck out to help Jesselyn who's being targeted by a douchebag lawfarephag "lawyer" who sues COWS funded by GOP/MAGA donors.

10:29 PM · Dec 31, 2019 · Twitter Web App

## II.  FITZGIBBON'S DISCOVERY REQUESTS

Prior to serving a subpoena on Twitter, Fitzgibbon served discovery requests on Radack.  In her discovery "responses", Radack refused to identify the telephones she used to communicate with others after April 9, 2019 – the date she signed the settlement agreement – frustrating Fitzgibbon's attempt to develop evidence of Radack's contacts

43

with **@DevinCow**, **@RayJoha2**, **@jimmysllama**, **@Kaidinn**, **@Foxfire**, **@sparrowmedia**, and other persons tagged in or part of the tweets at issue in this action. Radack refused to identify the messaging services or applications and email accounts she used to communicate, frustrating Fitzgibbon's effort to obtain evidence relevant to Radack's breaches of the settlement agreement, defamation and conspiracy.  In response to an interrogatory that asked Radack to identify all persons to whom she had made or published statements of and/or concerning Fitzgibbon after April 9, 2019, Radack claimed she suffered from "cog fog" and had "memory issues".  Radack conveniently remembered only a handful of people to whom she made statements about Fitzgibbon, including a "Beth Bogaerts", "a witness to Fitzgibbon's obsession with and harassment of Radack".[16]  Radack produced no documents and refused to identify Bogaerts' address, email address, and telephone number.  Radack described her conversations with Bogaerts in total as follows: "Beth Bogaerts has communicated to Ms. Radack conversations she previously had with Fitzgibbon which are reflected in Ms. Radack's counterclaim filed in the instant case".  Radack absolutely refused to produce any documents that identified the name, physical address, mailing address, email address, and/or IP address of the Twitter users she tagged, retweeted, replied to, or liked in tweets that were of or concerning Fitzgibbon.[17]

In light of Radack's "cog fog", her abject failure to respond to discovery *and* her pattern of spoliation of evidence, Fitzgibbon issued a subpoena to Twitter.  Fitzgibbon's

---

[16]     Upon information and belief, Bogearts is the person behind the following Twitter accounts: **@welltraveledfox**; **@foxfire2112**; **@foxfire2113**; **@foxfire3112**; **@foxfire3131**; **@YokoOnoOf301**, and several others accounts, including **@NoxFemme** and **@modernnomad3**.

[17]     A copy of Radack's discovery responses is attached as *Exhibit "A"*.

subpoena sought both non-content records and information relating to certain anonymous accounts with whom Radack clearly communicated - **@Kaidinn**, **@jimmysllama** and **@DevinCow** – and content communications with specific identified accounts – accounts with whom Radack was in contact about Fitzgibbon's lawsuit or who were mentioned/tagged in a tweet about Fitzgibbon or who were included in a thread that mentioned Fitzgibbon.

Counsel for Fitzgibbon and Twitter conferred about the subpoena.  Counsel for Fitzgibbon researched the issues raised by counsel for Twitter, including application of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*  By email dated February 2, 2020,[18] counsel for Fitzgibbon agreed to narrow the subpoena and to limit it to production of specific **non-content records and information**, specifically:

- Subpoena items 1, 2, 3, and 4, which requested non-content records and information that should be produced pursuant to and in accordance with the holdings in *Sines v. Kessler* and *Chevron Corp. v. Donziger*; and

- With regard to Subpoena items 5 and 6, which requested content records and information,[19] the "content" should be redacted and any responsive documents should be produced, with the senders, recipients and time/dates of the private message communications intact.

---

[18]     A copy of Fitzgibbon's counsel's email of February 2, 2020 is attached as *Exhibit "B"*.

[19]     Counsel for Fitzgibbon requested that Radack consent to disclosure of her content communications (direct messages, etc.) with the Twitter accounts identified in the subpoena.  This approach would have allowed Twitter to comply with the SCA and produce the documents. *See 18 U.S.C. § 2702(b)(3)*.  **Incredibly, Radack refused to consent!**  Fitzgibbon is not without a remedy.  He can obtain an Order from the Eastern District of Virginia, compelling Radack to obtain her private messages from Twitter. *Facebook v. Superior Court*, 4 Cal.5th 1245, 417 P.2d 725, 750 (Cal. 2018) (section 2702(c)(3) compels provider to obey lawful court order for production of content communications); *Fawcett v. Altieri*, 38 Misc.3d 1022, 960 N.Y.S.2d 692, 597 (N.Y. Super. 2013) (private social media posts may be compelled from a user in civil discovery "just as material from a personal diary may be discoverable").

As narrowed, Fitzgibbon sought **no** content communications from Twitter. *Xie v. Lai*, 2019 WL 7020340, at * 1, 5 (N.D. Cal. 2019) (granting application for service of subpoena on Google seeking "all non-content email headers, including the 'to' and 'from' lines and the dates, from the Google email account of Terry Lai", where the applicants alleged that "Mr. Lai is guilty of breach of contract, conspiracy, and misappropriation under Canadian law") (citing *Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, 2013 WL 256771, at 3 (N.D. Cal. 2013) (allowing discovery of "[d]ocuments sufficient to show the recipient(s), sender, date sent, date received, date read, and date deleted of emails.")).

In an effort to address and spare Twitter any undue burden or expense in redacting the content from Radack's direct messages, Counsel for Fitzgibbon also inquired whether (a) there were, in fact, any content communications (direct messages) responsive to the subpoena, and (b) what was the volume of such communications.  Counsel for Fitzgibbon also requested any legal authority for Twitter's position that *all* communications were protected by the SCA.  Prior to filing its motion to quash on February 4, 2019, **Counsel for Twitter did not respond to these inquiries**.[20]

## III.  DISCUSSION

The Federal Rules authorize broad discovery. *See, e.g., Fed. R. Civ. P. 26(b)(1)* ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").  Relevancy, for purposes of Rule 26(b), is a "broad concept that is construed liberally." *Bodyguard Productions, Inc. v. Doe 1*, 2018 WL 8489600, at

---

[20]    If there were no direct messages and private communications between Radack and **@DevinCow**, Twitter would have said that.  Twitter would not have filed a motion to quash.

\* 2 (D. Haw. 2018).  For purposes of pretrial discovery, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Daniels*, 294 F.R.D. at 512 (quoting *Marook v. State Farm Mut. Auto Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009)).

The Court should deny Twitter's motion to quash, and Order Twitter to produce the non-content records immediately.

Section 2702(a)(1) of the SCA prohibits Twitter – an entity providing electronic communications service to the public – from divulging the "contents" of a communication while in electronic storage by Twitter. *See In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F.Supp.2d 114, 127 (E.D. Va. 2011) ("content" information is information "concerning the substance, purport, or meaning" of a communication) (quoting 18 U.S.C. § 2510(8)).  Section 2702(a)(3) prohibits Twitter from divulging non-content records or other information pertaining to a subscriber to or customer of Twitter "to any governmental entity".

Fitzgibbon is clearly not a governmental entity.  Thus, he is entitled to production of the non-content records and information without question. *18 U.S.C. § 2702(c)(6) (Twitter may divulge a non-content record or other information pertaining to a subscriber to or customer of Twitter "(6) to any person other than a governmental*

*entity"); see, e.g., Bodyguard Productions*, 2018 WL 8489600 at * 2 ("Here, Defendant

Doe 1 argues that the production of the requested information would violate the Stored

Communications Act.  However, … the subpoenas here seek only subscriber information

and do not seek the content of communications.  Because Plaintiff is not a governmental

entity, GoDaddy.com and Domains by Proxy 'may disclose to [it] subscriber information,

other than content, consistent with the SCA'") (quotation omitted); *Lucas v. Jolin*, 2016

WL 2853576, at * 6 (S.D. Ohio 2016) ("concerning information that is not the 'contents'

of a communication, Plaintiff is entitled to limited disclosure", including "date, time,

originator and recipient fields" and "non-content metadata");[21] *Loop AI Labs, Inc. v.*

*Gatti*, 2016 WL 787924, at * 3 (N.D. Cal. 2016 ("Because Loop is not a governmental

entity, AT&T may disclose to it the subscriber information requested by the subpoena");

*Malibu Media, LLV v. Doe*, 2015 WL 4040409, at * 2 (D. Md. 2015) (18 U.S.C. §

2702©(6) expressly permits disclosure of a subscriber's "name, address, telephone

number, and e-mail address" in response to a Rule 45 subpoena); *Systems Products and*

*Solutions, Inc. v. Scramlin*, 2014 WL 3894385, at * 8 (E.D. Mich. 2014) ("Metadata

associated with electronic communications … are not considered to be content protected

by the SCA … This … includes a subscriber's name, address, records of session times

---

[21]     The Court in *Lucas v. Jolin* recognized that there is more than one way to skin a cat, and that the content communications (DMs) between Radack and the Twitter users at issue, including **@DevinCow** and **@Rayjoha2**, can be compelled if not produced by Radack under Rule 34. *Lucas*, 2016 WL 2853576 at * 8 ("In a personal injury case, when a plaintiff seeks damages for claimed injuries, he or she is often directed to execute a release in order for the defendant to examine his or her medical records related to the injuries, including medical records that may prove pre-existing injuries or otherwise lend credence to the defense.  In a similar way, Net VOIP will be compelled to request directly from Google the release of certain emails within the relevant time period, so that Plaintiff has some opportunity to discover relevant documents that may undermine the grounds on which Net VOIP seeks summary judgment and help prove Plaintiff's claim").

and durations, telephone or instrument number, or other subscriber number or identity");

*Obodai v. Indeed, Inc.*, 2013 WL 1191267, at * 3 (N.D. Cal. 2013) (holding that party was entitled to non-content "subscriber information", including phone numbers, email addresses, alternate email addresses, IP addresses used to access the account,[22] dates and times of access to the account, and other user identification information).

The issues raised by Twitter in its motion to quash were addressed by the Court in *Sines v. Kessler*, 2018 WL 3730434 (N.D. Cal. 2018).  *Sines* contains a thorough and reasonable discussion of the matter.  Following *Sines*, Fitzgibbon responds to Twitter's motion as follows:

1.     Only Twitter moved to quash the subpoena.  Neither Radack nor any other non-party objected to the subpoena.  Twitter alone has standing to move to quash the subpoena and only on its own behalf. *Sines*, 2018 WL 3730434 at * 9.  Twitter has no First Amendment or Fourth Amendment rights in the non-content records and information at issue.  The only arguments Twitter can assert are compliance with the SCA and "undue burden" under Rule 45(d)(3)(iv).  Both arguments fail. *See, e.g., Sines*, 2018 WL 3730434 at * 11 ("Nothing in the SCA prohibits Discord from disclosing Doe's account information to Plaintiffs"); *id.* ("Disclosure of this limited information is not overbroad, unduly burdensome or disproportionate to the needs of the case").

2.     Prior to February 4, 2020, Counsel for Fitzgibbon gave Twitter the opportunity to identify the volume of direct messages between Radack and the Twitter users identified in the subpoena, in order to assess whether there would be any burden on

---

[22]     This non-content information is important in a case such as this, where multiple users may be accessing a single anonymous Twitter account, *i.e.* **@DevinCow**, from multiple different computers around the country as part of a coordinated defamation campaign.

Twitter to redact the content from the direct messages.  Twitter refused to identify the volume of direct messages at issue.  Twitter should be estopped to claim any burden at this point.

3. In his second amended complaint, Fitzgibbon, *inter alia*, asserts claims of breach of contract by Radack, defamation by Radack, and conspiracy between Radack and certain persons, including **@RayJoha2**, **@UpTheCypherPunx**, **@jimmysllama**, **@Kaidinn** and others, to defame Fitgibbon.  A common law conspiracy consists of an agreement between two or more persons to accomplish, by some concerted action, an unlawful purpose or a lawful purpose by unlawful means. *Harrell v. Colonial Holdings, Inc.*, 923 F.Supp.2d 813, 825 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted).  It is well-established that acts of defamation may form the predicate of a claim of civil conspiracy. *Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications.  The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1 (Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession."); *Cobbs v. Commonwealth*, 2001 WL 322728, at * 4-5 (Chesterfield Cir. 2001) (overruling demurrer to conspiracy to defame count); *Carolinas Cement Co. v.*

*Riverton Inv. Co.*, 2000 WL 33340623, at * 6 (Frederick Cir. 2000) ("the Demurrer is overruled to the extent that the conspiracy is based on the defamation of the plaintiff"). In connection with his common law conspiracy claim, Fitzgibbon must prove that Radack combined, associated or acted in concert with others to defame Fitzgibbon.  Fitzgibbon alleges that Radack and her confederates used Twitter to disseminate false and defamatory statements.   Each of Twitter accounts at issue was involved in the dissemination of one or more of the defamatory statements, either by retweeting, replying to, liking the statement about Fitzgibbon, or was tagged by Radack.  Thus, each account has direct knowledge of Radack's breaches of the settlement agreement and defamation – two of Fitzgibbon's core claims. *Compare Scramlin*, 2014 WL 3894385 at * 9 ("As noted above, the SCA does not protect metadata, and this information may reveal the extent to which Scramlin communicated with others via email regarding bids for the ABCT contract.  This information is directly related to SPS's claims and is not readily available from any other source") (citation omitted).

4.     Because each of the users of the Twitter accounts, including **@DevinCow**, "could be a witness with information relevant to Plaintiff['s] case", their "identifying information … is not disproportionate or overbroad." *Sines*, 2018 WL 3730434 at * 11 (citing *Drummond Co. Inc. v. Collingsworth*, 2013 WL 6074157, at * 10 (N.D. Cal. 2013) (holding that identifying information of email account holders met Rule 26's relevancy standard so that the plaintiff could find individuals who might have received payments from the defendants).

5.     Because Radack's responses to Fitzgibbon's discovery requests are clearly inadequate and because Fitzgibbon only has a fraction of the communications between

Radack and the Twitter users (and none of the direct messages), Fitzgibbon issued the subpoena to Twitter.  Fitzgibbon's subpoena is significantly narrower than the subpoena in *Sines*, 2018 WL 3730434 at * 3.  Fitzgibbon seeks non-content records and information only, and does so for a legitimate purpose, *i.e., to subpoena third-parties and take depositions in this action*.

6.     In *Sines*, the Court observed that the United States District Court for the Western District of Virginia, the trial court, had entered a protective order. *Id.*  Fitzgibbon offered to enter into a comprehensive protective order, but both Twitter and Radack refused.  Fitzgibbon understands why Radack does not want the truth to be revealed.  The truth is she has engaged in substantial private communications (direct messages) with third-parties, including **@DevinCow**, in breach of the settlement agreement.  Twitter's refusal to stipulate to the confidentiality of the non-content records, so as to facilitate discovery, demonstrates that its position is arbitrary and capricious.

7.     Even if Twitter had standing to assert a non-party's right to engage in anonymous free speech[23] under the First Amendment – which it does not – the importance to the case of disclosing the identities of the anonymous Twitter users outweighs any burden on the non-party's right to free speech, especially given Fitzgibbon's offer to enter into a protective order and Radack and Twitter's refusal to so stipulate.  First, no one has the right to hide behind a mask and commit unlawful acts.

---

[23]     Even Twitter must acknowledge, **the United States Supreme Court has repeatedly and without exception held that libelous speech is not protected by the First Amendment**.  Simply put, there is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974); *United States v. Alvarez*, 132 S. Ct. 2537, 2560 (2012) ("false factual statements possess no First Amendment value."); *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984).

The person who wears a Richard Nixon or Bill Clinton mask and enters a bank with the intent to commit robbery is no different than a masked Twitter user who wears a clever costume when he or they (user or users) defame and conspire to defame another via social media.  The subpoena in this case was issued in good faith and for the proper purpose of obtaining discoverable information.  Fitzgibbon's willingness and proffer of a draft stipulated protective order demonstrates his good faith intent to "safeguard against any improper use of Doe's information". *Sines*, 2018 WL 3730434 at * 14.  Second, the non-content records and information sought by Fitzgibbon go to proving Radack's breaches of the settlement agreement and conspiracy with third-parties, which are two of Fitzgibbon's core claims.  Fitzgibbon points to evidence that Radack published tweets to and privately communicated with each of the anonymous Twitter users.  Fitzgibbon has also presented evidence suggesting that **@Kaidinn. @jimmysllama**, **@Rayjoha2** and **@UpTheCypherPunx** are co-conspirators connected to his core claim that Radack conspired with others to defame Fitzgibbon.   Third, the non-content records and information are directly and materially relevant to Fitzgibbon's core claims.  Here, as in *Sines*, uncovering potential witnesses to Radack's breaches of the settlement agreement and participants in the conspiracy to defame are integral parts of Fitzgibbon's case, particularly because Fitzgibbon has good reason to believe that the anonymous Twitter users are direct material witnesses to Radack's breaches and/or are Radack's co-conspirators.  Finally, the non-content records and information are not available from another source.  Radack cannot be trusted.  She refuses to comply with lawful discovery, and who is to say what she has preserved, given her track record of spoliation.  Twitter is the **<u>only</u>** person who knows the name, address, telephone number, and email address used

by the user or users of the anonymous accounts to set up those Twitter accounts.  If the non-content information at issue is treated as confidential under a protective order, the identities of the anonymous Twitter users can be shielded from non-parties to this litigation. *Sines*, 2018 WL 3730434 at * 14.

8.      The anonymous Twitter accounts at issue in this case have no reasonable expectation of privacy in their non-content subscriber information. *See, e.g., Humphrey v. Department of Defense*, 2018 WL 5020209, at * 2 (D. Haw. 2018) ("Customers of third-party service providers do not have a reasonable expectation of privacy in their non-content subscriber information").   Neither the First Amendment nor the Fourth Amendment of the United States Constitution provides any basis to withhold production. Indeed, courts in both civil and criminal contexts routinely order disclosure of *basic subscriber information* over various constitutional objections. *Doe v. SEC*, 2011 WL 4593181, at * 4 (N.D. Cal. 2011) (citing *In re Section 2703(d)*, 787 F.Supp.2d 430 (E.D. Va. 2011) (freedom of association does not shield persons from cooperating with legitimate government investigations, and routine compelled disclosure of non-content information that customer voluntarily provided to service provider does not form basis for First Amendment claim; *London v. Does 1-4*, 279 F.Appx. 513 )9th Cir. 2008) (affirming denial of motion to quash civil subpoena to internet service provider that revealed owner of email accounts because "exposure of some identifying data does not violate the First Amendment").

9.      Finally, even if Twitter had standing to assert a non-party's rights to freedom of association under the First Amendment – which it does not – discovering the non-content records and information is rationally related to obtaining evidence regarding

Radack's breaches of the settlement agreement *and* the alleged ongoing conspiracy to defame Fitzgibbon, including evidence of Radack's direction and participation in the conspiracy. There is reason to believe that each of the anonymous Twitter users identified in the subpoena could be an integral witness in the case, even though not named as a defendant. As explained above, only Twitter and the user or users of the accounts are known to possess the non-content information, making subpoenas to these persons, the "least restrictive means" of obtaining the information, particularly where Fitzgibbon is not currently aware of the Twitter users' identities and, thus, cannot seek discovery from them directly. *Sines*, 2018 WL 3730434 at * 15.

The litigation between Fitzgibbon and Radack is important. This is not a case where Radack and the anonymous Twitter users engaged in political speech. To the contrary. Radack used Twitter to breach the settlement agreement, defame Fitzgibbon, and she conspired with others to use Twitter to defame Fitzgibbon and cause him physical and emotional injury. Twitter let it happen, and is now using its enormous power and wealth to cover-up the wrongdoing. Twitter's conduct is egregious and intolerable.

## CONCLUSION AND REQUEST FOR RELIEF

Twitter's refusal to comply with the SCA is not unintentional. Twitter has a motive to conceal the identity of at least one of the anonymous Twitter accounts communicating with Radack, **@DevinCow**.[24] Twitter attempts to spin an absolutely

---

[24]    Twitter is being sued in Henrico County Circuit Court for negligence. As Judge John Marshall noted in his Opinion denying Twitter's motion to dismiss, a copy of which is attached as *Exhibit "C"*, Twitter's negligence is tied directly to defamation that occurred with Twitter's knowledge and consent on Twitter's platform in Virginia. By concealing the identity of **@DevinCow**, and refusing to comply with the SCA in this case, Twitter shows its true colors.

baseless narrative that somehow one of Fitzgibbon's counsel's other clients is behind the subpoena. This patently false spin, engineered after-the-fact, is revealed by the reaction of **@Kaidinn** to the subpoena. When **@Kaidinn** first became aware of the subpoena, his/her/it/them's Twitter profile acknowledged that "Trevor Fitzgibbon" subpoenaed Twitter:



**Trevor Fitzgibbon subpoenad @Kaidinn's 4 accounts.**
@WhoPaysBiss

twilight warrior | @Kaidinn was suspended | Telegram: @Kaidinn | Open DMs | These are temp accounts due to reportphags. If suspended, find me at #bunnysec.

🌐 lovable truth-telling troll   🔗 stawpp.tumblr.com   📅 Joined May 2019

**0** Following   **2** Followers

Then, the narrative changed as the user or users of the Twitter accounts manufactured a claim out of whole cloth:



**Devin Nunes lawyer subpoenad @Kaidinn's 4 accounts**
@WhoPaysBiss

#Resistance | twilight warrior | @Kaidinn was suspended. | Telegram: @Kaidinn |
These are temp accounts due to reportphags.  If suspended, find me at
#bunnysec.

⊚ lovable truth-telling troll   🔗 stawpp.tumblr.com   📅 Joined May 2019
**20** Following   **18** Followers

The Court should not be fooled by Twitter's games.  The purpose of discovery is to facilitate the search for the truth.  **@Kaidinn**, **@jimmysllama** and **@DevinCow** were/are all in direct communication with Radack.  The tweets that were preserved (via screenshots) by Fitzgibbon prior to their spoliation by **@DevinCow** and Radack prove this.  **@Kaidinn**, **@jimmysllama** and **@DevinCow** are all witnesses to Radack's breaches of the settlement agreement and her defamation.  Fitzgibbon is entitled to production of the non-content records and information under the SCA, so he can issue subpoenas and take depositions for use at trial.

For the foregoing reasons, Trevor Fitzgibbon respectfully requests the Court to (a) deny Twitter's motion to quash, (b) Order Twitter to produce the non-content records and information immediately, (c) hold Twitter in contempt pursuant to Rule 45(g) for its

failure to obey the subpoena, and (d) Order Twitter to pay Fitzgibbon's legal fees and

costs incurred in responding to the motion to quash.


TREVOR FITZGIBBON


By:___*/s/ Steven S. Biss*_____

      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:   (804) 501-8272
      Facsimile:   (202) 318-4098
      Email:      **stevenbiss@earthlink.net**

      *Counsel for Trevor Fitzgibbon*

### CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for Twitter and all interested parties receiving notices via CM/ECF.

By:   */s/ Steven S. Biss*
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:     (804) 501-8272
          Facsimile:      (202) 318-4098
          Email:          **stevenbiss@earthlink.net**

          *Counsel for Trevor Fitzgibbon*