IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| In Re Subpoena To Twitter, Inc. ) | |
| _____ ) | |
| ) | |
| TREVOR FITZGIBBON, ) | |
| ) | Misc. Case No.: 3:20-mc-00003 |
| *Plaintiff*, ) | |
| v. ) | Action currently pending in U.S. |
| ) | District Court E.D. Va. (Case No. |
| JESSELYN A. RADACK, ) | 3:19-cv-477-REP) |
| ) | |
| *Defendant*. ) | |
| ) | |

**REPLY IN SUPPORT OF MOTION TO QUASH BY NON-PARTY TWITTER, INC.**

Plaintiff's 59-page Opposition misapprehends the law and fails to provide any justification for the invasive discovery he demands from Twitter about 23 accounts on the Twitter platform. First and foremost, Fitzgibbon's arguments completely disregard the First Amendment rights of Twitter's anonymous users (Requests 1, 2, 3). Courts across the country have agreed that an online service provider, like Twitter, can, and is often best positioned to, assert its users' rights to anonymity. Fitzgibbon cannot intrude on these rights without proving, among other things, that unmasking these particular anonymous speakers is necessary to advance his core claims and defenses—including by demonstrating that these speakers have highly relevant information that Fitzgibbon cannot obtain elsewhere.

The Opposition confirms that Fitzgibbon cannot come close to satisfying this demanding standard to unmask @DevinCow. Indeed, the Tweets that purportedly demonstrate @DevinCow's relevance, if anything, underscore that @DevinCow is embroiled in this dispute only because @DevinCow is the defendant in another, *unrelated* state-court action in which Fitzgibbon's counsel represents a different plaintiff and has sought repeatedly, without success, to discover the identity of the account holder of @DevinCow. Fitzgibbon has not demonstrated that @DevinCow

is even relevant to his case, let alone that he will be unable to pursue his claims against Radack without unmasking @DevinCow.

Fitzgibbon's arguments regarding his other requests are also meritless. He fails to address Twitter's arguments that the Stored Communications Act ("SCA") prohibits it from producing a user's address book (Request 4) and Tweets, Retweets, Likes and replies (even redacted) in response to a demand for communications containing certain words (Request 5). Nor does Fitzgibbon address Twitter's argument that the Subpoena imposes an undue burden in violation of Federal Rule of Civil Procedure 45(d) by demanding that Twitter manually redact communications between @JesselynRadack and other users that, once redacted, would be (at best) barely relevant to his claims because they would show nothing more than the accounts from or to which each message was sent and the time and date of each message (Request 6).

Moreover, recognizing that these three requests (Requests 4, 5, 6) seek Radack's own documents, Fitzgibbon concedes that he has other options. He could, for example, move to compel the discovery he seeks from Radack. Fitzgibbon never explains why he did not pursue—and still has not pursued—this less burdensome alternative.

The Subpoena must be quashed.

## ARGUMENT

**I.      The First Amendment Protects the Anonymity of Twitter's Users (Requests 1, 2, & 3)**

Twitter's opening brief explained that Requests 1, 2, and 3 must be quashed because Fitzgibbon had not (and cannot, in the case of @DevinCow) satisfy the First Amendment's demanding test for unmasking anonymous speakers. The Opposition does nothing to resolve this fatal defect.[1]

---

[1] Fitzgibbon does not dispute that the First Amendment also protects the anonymous accounts whose communications are demanded in Request 6, to the extent that disclosure of these

2

*First*, Fitzgibbon is wrong that Twitter lacks standing to defend the First Amendment rights of its account holders. *See* Mem. in Opp. to Twitter's Motion to Quash Subpoena ("Opp."), Dkt. 6, at 49, 52. The Subpoena infringes on the First Amendment rights of Twitter and of Twitter's users, and Twitter has standing to defend the rights of both. As to Twitter itself, the First Amendment fully protects Twitter's actions in providing a platform for the dissemination of its users' speech, including its decision to permit the publication of pseudonymous speech. *See, e.g.*, *Marcus v. Search Warrants*, 367 U.S. 717, 731-732 (1961); *cf.*, *e.g.*, *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998). And when rights of free speech—especially anonymous free speech—are at stake, courts permit an organization or business to assert those rights on behalf of its members or customers. *See, e.g.*, *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-393 (1988) (permitting booksellers to assert First Amendment rights of buyers of adult-oriented books); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1009 n.5 (E.D. Cal. 2017) (collecting cases holding that entities such as websites can assert the First Amendment rights of their anonymous users).

It is therefore unsurprising that courts across the country regularly address First Amendment challenges pressed by operators of online platforms against subpoenas that seek to unmask the identity of their anonymous users. *See, e.g.*, *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983-984 (N.D. Cal. 2015) (denying motion to compel based on First Amendment anonymity argument asserted by Twitter); *In re Drasin*, Nos. ELH-13-1140, 13-cv-00304, 2013 WL 3866777 (D. Md. July 24, 2013) (granting motion to quash filed by website administrator to protect website users' First Amendment right to speak anonymously);

---

communications could, potentially, reveal information that would unmask those account holders. *See* Mem. in Support of Motion to Quash Subpoena by Non-Party Twitter, Inc. ("Mem."), Dkt. 2 at 16 n.5.

*Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432, 453-454 (Md. 2009) (same).[2] The only case Fitzgibbon cites is inapposite, because it rejected an anonymous *user's* argument that she had standing to challenge a subpoena on behalf of *other* anonymous users. *See Sines v. Kessler*, No. 18-mc-80080-JCS, 2018 WL 3730434, at *9 (N.D. Cal. Aug. 6, 2018). The Court has ample basis to consider the First Amendment concerns here.

*Second*, Fitzgibbon errs in suggesting that the First Amendment provides no protection to Twitter's anonymous users because they "have no reasonable expectation of privacy in their non-content subscriber information." Opp. 54. Although that test may be relevant to a *Fourth Amendment* analysis, it is not the *First Amendment* test for unmasking an anonymous speaker. Rather, the applicable First Amendment test requires a litigant to prove, among other things, that unmasking the anonymous speaker is necessary to advance his claims—including by demonstrating that there is no other way for the proponent of the subpoena to obtain information essential to his case. *See* Mem. in Support of Motion to Quash Subpoena by Non-Party Twitter, Inc. ("Mem."), Dkt. 2 at 13-14 (collecting cases).[3] That is true whether the anonymous speaker is an actual (or prospective) defendant in the underlying litigation, or merely a potential source of evidence. *See Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001) (to unmask a non-party, a party must show that (1) the subpoena was issued in good faith, (2) "the

---

[2] *See also In re Yasuda*, No. 19-mc-80156-TSH, 2019 WL 7020211, at *3 (N.D. Cal. Dec. 20, 2019); *In re PGS Home Co. Ltd.,* No. 19-mc-80139-JCS, 2019 WL 6311407, at *3 (N.D. Cal. Nov. 25, 2019); *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1022 (D. Minn. 2016); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 17 n.3 (D.D.C. 2009); *McVicker v. King*, 266 F.R.D. 92, 97 (W.D. Pa. 2010); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 787 (M.D. Pa. 2008).

[3] To the extent that some courts have considered a user's reasonable expectation of privacy as part of the First Amendment test for unmasking anonymous users, they have merely weighed it among the other factors courts typically consider, not treated it as dispositive on its own. *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004).

information sought relates to a core claim or defense," (3) "the identifying information is directly and materially relevant to that claim or defense," and (4) no other source could provide "information sufficient to establish or disprove that claim or defense."); *see also*, *e.g.*, *Sines*, 2018 WL 3730434, at *12 (applying the *2TheMart* test); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 788 (M.D. Pa. 2008) (same).

Fitzgibbon does not dispute that this is the correct test to evaluate whether to unmask an anonymous speaker in civil litigation. And the handful of cases he cites do not hold that some other test applies. *Doe v. S.E.C.* involved an administrative subpoena issued by a federal law-enforcement agency to discover the identity of the owner of an email address that the SEC believed had been used as part of a "pump and dump" scheme. *Doe v. S.E.C.*, No. 3:11-mc-80184, 2011 WL 4593181, at *2 (N.D. Cal. Oct. 4, 2011). The court accordingly applied a standard applicable to subpoenas issued pursuant to "valid government investigations," rather than the standard applicable to "disclosure in civil actions involving private parties embroiled in discovery disputes." *See id.* at *3, *6. Fitzgibbon's reference to *London v. Does 1-4*, 279 F. App'x 513 (9th Cir. 2008), similarly fails to support his position. There, the Ninth Circuit (in an unpublished opinion) affirmed a district court's denial of a motion to quash only after concluding that the identifying information sought was "critical" to claims and defenses in a case that, unlike this case, hinged on the identity of the users of the email accounts, and that "[s]uch evidence [could] be the only way to identify the user of the email accounts." *Id.* at 515. Moreover, more recent, published Ninth Circuit authority confirms that a party seeking to unmask an anonymous speaker in civil discovery must demonstrate that its need for discovery of the speaker's identity outweighs the speaker's First Amendment interest in remaining anonymous. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1176 (9th Cir. 2011). Thus, neither case suggests that Fitzgibbon can avoid the demanding First Amendment standard applied by courts across the country.

*Third*, Fitzgibbon has not come close to making the exacting showing necessary to unmask @DevinCow. Fitzgibbon fails to show that @DevinCow has *any* evidence of Radack's alleged wrongdoing, let alone that @DevinCow is *uniquely* in possession of critically important evidence on which the success of Fitzgibbon's claims depends. *See* Ex. A (collecting all of the images of Tweets that Fitzgibbon has put forward as allegedly showing a connection between @DevinCow and Fitzgibbon's case). Fitzgibbon does not dispute that the pleadings in his case never mention @DevinCow. And he nowhere explains how either of the two screenshots his counsel previously shared with Twitter's counsel show that @DevinCow is a "potential witness[] to Radack's breaches of the settlement agreement" or a "participant[] in the conspiracy to defame" him. Opp. 53; *see* Ex. A at 4. As explained in Twitter's opening brief, these Tweets involved unilateral outreach by @JesselynRadack to @DevinCow, commenting on entirely different subject matter. They do not suggest, even remotely, that @DevinCow was involved in, or witness to, any of the alleged misconduct in the *Fitzgibbon* Litigation.

Nor do any of the four recent Tweets relating to @DevinCow highlighted in Fitzgibbon's Opposition suggest any connection between @DevinCow and Radack's alleged defamation of Fitzgibbon. All these Tweets were posted after Twitter had notified all of the users affected by the Subpoena, and seem to have been prompted by the happenstance—created by Fitzgibbon and his counsel—that the Subpoena seeks information from a group of Twitter accounts that includes @JesselynRadack and @DevinCow. *See* Opp. 30, 35-36, 40, 41. Three of the four Tweets appear to involve unilateral outreach from @JesselynRadack, or one of these other accounts, without any statement or response from @DevinCow. See Opp. 30, 35-36, 40. In one, @DevinCow was unilaterally "tagged" (i.e., mentioned by account name) by the author of the Tweet along with many other accounts whose information is also demanded by the Subpoena. *See* Opp. 35-36. The remaining three Tweets refer to the fact that Fitzgibbon's counsel (Steven S. Biss) also represents

6

Congressman Devin Nunes in a defamation action against @DevinCow (as well as several other plaintiffs prosecuting other defamation suits). *See* Opp. 30, 40, 41. The possibility that @DevinCow and @JesselynRadack may (or may not) have a reason to communicate with each other about being targets of different lawsuits filed by the same lawyer hardly shows that @DevinCow can provide testimony or information that is essential to the success of Fitzgibbon's claims. And even if @DevinCow did have some knowledge or information about Radack's alleged conspiracy, Fitzgibbon still could not satisfy the First Amendment standard because he has not tried to compel Radack to produce that information and has not shown that unmasking @DevinCow is truly necessary.

The primary case on which Fitzgibbon relies, *Sines*, 2018 WL 3730434, further underscores that he cannot meet the First Amendment standard for unmasking @DevinCow. In that case, the subpoena sought to discover the account information of an anonymous individual who, according to credible evidence, had "at [a] minimum" "discussed preparations for the event" that gave rise to plaintiffs' claims. *Id.* at *11; *see also id.* at *13 ("[D]iscovery from other individuals involved in planning the … event is highly relevant to understanding Defendants' purpose and intent in organization it."). The court concluded that "[s]uch participation support[ed] an inference that Doe could be a witness with information relevant to Plaintiffs' case." *Id.* at *11. Here, Fitzgibbon has not produced any evidence that @DevinCow even discussed Fitzgibbon with Radack at all, much less that @DevinCow is a critically important witness to Radack's alleged conspiracy to defame him.

*Fourth*, Fitzgibbon offers no response to Twitter's request that the Court provide an opportunity for the anonymous speakers behind @jimmysllama and @Kaidinn to intervene to

defend their own interests.[4]  *See* Mem. 15.  These two account holders should be allowed to intervene because it is unclear from Fitzgibbon's filings whether the First Amendment test for unmasking them has been met.  For example, Fitzgibbon may not be able to demonstrate that these account holders have critically important information that cannot be obtained elsewhere.  *See, e.g., Doe I v. Individuals*, 561 F. Supp. 2d 249, 255 (D. Conn. 2008); *2TheMart.com Inc.*, 140 F. Supp. 2d at 1090.  Fitzgibbon should already have, or can independently obtain, any significant *public* Tweets to which they may have been witnesses.[5]  As for any *private* communications that @jimmysllama and @Kaidinn might have had with @JesselynRadack, Fitzgibbon must, at a minimum, move to compel Radack to produce these communications in the first instance.[6]  Only at that point would the Court be able to determine whether @jimmysllama and @Kaidinn have any non-cumulative evidence centrally needed to advance Fitzgibbon's core claims and defenses.  Intervention by these individuals would ensure that their identities are not revealed without Fitzgibbon first overcoming the stringent First Amendment standard for unmasking anonymous speakers.

*Finally*, Fitzgibbon is wrong that a protective order would adequately protect the First Amendment interests of Twitter's users.  *See* Opp. 52.  If it could, then courts could always compel

---

[4]   While @DevinCow should also be given an opportunity to intervene, participation by @DevinCow is likely unnecessary given the overwhelmingly obvious defects in the Subpoena's request for information about that account.

[5]   Indeed, in an "Additional Evidence" filing made just hours before this Reply was filed, Fitzgibbon conceded that he has already obtained and preserved evidence of any relevant public communications made through the Twitter platform.  *See* Statement of Additional Evidence ¶ 4, Dkt. 11.

[6]   Fitzgibbon's "Additional Evidence" filing of February 18 also undermines any argument that he has a substantial need to discover any private communications between these pseudonymous users and Radack, since that filing indicates that Fitzgibbon believes that he already has sufficient evidence to prove Radack's liability on all of Fitzgibbon's claims in the underlying litigation.  *See* Statement of Additional Evidence at 3-5.

disclosure subject to a protective order rather than quash the subpoena, but that is not what the law requires.  *See, e.g.*, *Music Grp. Macao*, 82 F. Supp. 3d. at 979 (denying motion to compel); *SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1218 (W.D. Wash. 2010) (granting motion to quash); *2TheMart.com Inc.*, 140 F. Supp. 2d at 1090 (same).  Again, *Sines* does not suggest otherwise.  The court in that case rejected Jane Doe's argument that plaintiffs had issued a subpoena for her account information in bad faith (supposedly in order to "destroy[]" her life) for two reasons: the protective order would prevent the plaintiffs from using the subpoena in that manner, and the account information demanded was highly relevant to plaintiffs' core claims.  *Sines*, 2018 WL 3730434, at *13.  The court did not suggest a protective order could excuse plaintiffs from satisfying the First Amendment standard for unmasking anonymous speakers.  Because @DevinCow is entitled to remain pseudonymous under the First Amendment, and because Fitzgibbon has (at least so far) failed to meet the First Amendment standard with respect to @jimmysllama and @Kaidinn too, the Court must quash the Subpoena.

**II.     The Stored Communications Act Requires Quashing Requests 4 and 5**

Fitzgibbon concedes that the Stored Communications Act ("SCA") prohibits Twitter from divulging the "contents" of an electronic communication.  Opp. 47-49.  But he nonetheless argues that the SCA poses no barrier on the theory that the Subpoena, "[a]s narrowed," seeks "**no** content communications from Twitter."  Opp. 46 (emphasis in original).

Fitzgibbon is simply incorrect.  Request 4 does indeed seek "content" because the address book contacts sought by the Subpoena are "part of the substantive information" that @JesselynRadack "conveyed" to Twitter.  *See In re Subpoena 2018R00776*, 947 F.3d 148, 152 (3d Cir. 2020) ("saved files" are "contents of wire or electronic communication" as defined in the SCA); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) (interpreting an analogous term in the Wiretap Act, 18 U.S.C. § 2510 *et seq.*); *Lucas v. Jolin*,

9

No. 1:15-CV-108, 2016 WL 2853576, at *6 (S.D. Ohio May 16, 2016) (documents created in Google Docs are covered by the SCA).  Fitzgibbon fails to even address whether names, addresses, and phone numbers that a user chooses to store online in an address book should be considered non-content records under the SCA.  He therefore concedes the point.

Fitzgibbon likewise fails to refute, and therefore concedes, that redaction cannot solve the SCA problem with Request 5, which seeks communications published by Radack or @JesselynRadack that contain particular words.  Even if the entire "content" of any responsive communication were redacted, Twitter's act of producing it in redacted form in response to Request 5 would necessarily disclose that the communication in question "contain[s] the words 'rapist', 'predator', 'serial', 'stalk', [or] 'threaten.'" Dkt. 4-1 at 13.  Disclosing such content would violate the SCA.  *See, e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *2 (N.D. Cal. Feb. 7, 2018) (holding that the SCA prohibited disclosure of direct Twitter messages pursuant to a subpoena).

The Stored Communications Act thus requires quashing Requests 4 and 5.

**III.    Requests 3, 4, 5, and 6 Impose an Undue Burden on Twitter**

Independently of all the foregoing fatal defects, the Subpoena also imposes an undue burden in violation of Rule 45(d)(3) because (1) Requests 4, 5, and 6 seek documents that Fitzgibbon could instead obtain from Radack, and (2) Requests 3 and 6 seek documents that are irrelevant, and (3) Request 6 demands that Twitter redact communications that, once redacted, would have too little bearing on Fitzgibbon's claims and defenses to warrant the cost that redaction would entail.  *See* Mem. 19-22.  Fitzgibbon offers no response to these deficiencies.

*First*, Fitzgibbon provides no justification for failing—even to this day—to move to compel Radack to comply with the discovery demands he served on her as the named defendant in the underlying case.  He suggests that Radack may have destroyed the evidence he seeks because

10

she has a "track record of spoliation." Opp. 53. If that proposition (for which Fitzgibbon offers no substantiation) is true, then Judge Payne is well-equipped to address discovery disputes between the parties and take appropriate action in the *Fitzgibbon* Litigation.[7] Moreover, Fitzgibbon himself claims that he would "not [be] without a remedy" if Radack has destroyed the evidence: "He can obtain an Order from the Eastern District of Virginia, compelling Radack to obtain her private messages from Twitter." Opp. 45 n.19; *see also* Opp. 48 n.21. Fitzgibbon also speculates that there may be only a small "volume of direct messages at issue." Opp. 50. But that is irrelevant. Rule 45(d)(3) requires Fitzgibbon to pursue Radack's documents from Radack herself before burdening Twitter, a non-party, with his discovery demands. *See Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. CV 3:16-MC-1, 2016 WL 1071016, at *8 (E.D. Va. Mar. 17, 2016) (Payne, J.). For this reason alone, Requests 4, 5, and 6 must be quashed.

*Second*, Fitzgibbon says nothing that demonstrates the relevance to the claims and defenses in the *Fitzgibbon* Litigation of information relating to @DevinCow and of communications between @JesselynRadack and @McClellanKM or @YourAnonNews. As already discussed *supra*, information relating to @DevinCow is completely irrelevant. So are @JesselynRadack's communications with at least two of the other accounts implicated by the Subpoena (@McClellanKM and @YourAnonNews). *See* Mem. 21-22. Neither of these accounts is referenced in the operative pleadings, nor has Fitzgibbon provided any basis to suggest that communications between @JesselynRadack and either of these accounts have any connection whatsoever to Fitzgibbon's claims.

---

[7] A third-party subpoena is not the only option. Federal courts have significant discretion to fashion an appropriate remedy for spoliation. *See, e.g.*, *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004) (federal courts have an inherent power to "impos[e] . . . a sanction (e.g., an adverse inference) for spoliation of evidence").

11

*Third*, Fitzgibbon has failed to respond to Twitter's argument that his request for communications with all "content" entirely redacted (Request 6, as modified) imposes an undue burden. He does not explain how such documents stripped of all content—and reflecting nothing more than the accounts from or to which a message was sent and the time and date of the message—could have a significant bearing on his claims and defenses and so fails to justify imposing on Twitter the cost of manually redacting such documents.

Rule 45(d)(3) requires quashing Requests 3, 4, 5, and 6.

## IV. Fitzgibbon's "Additional Evidence" Fails to Cure Any of the Numerous Problems that Require Quashing the Subpoena

Just hours before Twitter's deadline to file this Reply, Fitzgibbon filed a "Statement of Additional Evidence" that, he alleges, demonstrates his basis and need for the Subpoena's demands. *See* Statement of Additional Evidence ¶¶ 5, 7, 15-17. This "additional evidence" consists exclusively of what purport to be a series of Direct Messages pertaining to Fitzgibbon that were supposedly exchanged between @JesselynRadack and an unidentified Twitter account holder whom Fitzgibbon describes as a "whistleblower." *Id.* at 3-5. While Fitzgibbon says he knows the identity of this "whistleblower," *id.* at 3 n.2, he does not suggest that the "whistleblower" has any connection to any of the Twitter accounts listed in the Subpoena (other than @JesselynRadack).

Fitzgibbon's last-minute filing does not cure any of the Subpoena's numerous defects. Nothing in the filing demonstrates that the identity of @DevinCow (or @jimmysllama and @Kaidinn, for that matter) is at all relevant to Fitzgibbon's claims—let alone that he thinks he *needs* to unmask these users to prove those claims. To the contrary, the filing indicates that Fitzgibbon believes he already has sufficient evidence to prove Radack's liability, and so, if anything, confirms that Fitzgibbon has no such need. *See* Statement of Additional Evidence at 3-

5. Nor does the filing overcome any of the insurmountable hurdles to Fitzgibbon's other requests: The filing concedes that the SCA prohibits Twitter from producing the content of any communications, public or private, including direct messages, between @JesselynRadack and other accounts. It nowhere explains how redacted direct messages (which is all that Twitter could produce under the SCA) could possibly advance Fitzgibbon's claims; it does not, that is, explain how redacted communications showing only the senders, recipients, and dates of the messages could illuminate whether Radack has used Twitter "to defame Fitzgibbon behind the scenes." *Id.* ¶ 5. And the filing still says nothing about why Fitzgibbon has sought barely relevant, redacted communications from Twitter, rather than moving to compel unredacted versions of those same messages from the actual defendant in his case. Fitzgibbon's "additional evidence" changes nothing. The Subpoena must still be quashed.

## V.  This Court Should Award Twitter Fees and Costs

Finally, Fitzgibbon offers no response to the argument that this Court should award Twitter the fees and costs incurred in connection with its Motion under Rule 45(d)(1). Fitzgibbon's counsel's offer to stipulate to a protective order does not dispel the inference of improper purpose in his demand for identifying information for @DevinCow—a defendant in an entirely separate lawsuit in which Mr. Biss represents the plaintiff. A protective order that limits disclosure to counsel for the parties would still mean disclosing @DevinCow's identity to one of the individuals that has unjustifiably sought to invade the account's anonymity: Mr. Biss, Fitzgibbon's counsel. And the inference of improper purpose is only strengthened by the complete absence of any evidence that @DevinCow was involved in the events alleged in the pleadings of the *Fitzgibbon* Litigation and Fitzgibbon's concession that he could have—but has not—sought to compel production of most of the demanded records from Ms. Radack herself. The Subpoena demands the very same information that Mr. Biss has been seeking (so far, unsuccessfully) in an unrelated

action in Virginia state court. He should not be permitted to use this Subpoena to circumvent that court's management of ongoing discovery disputes. An award of fees and costs is needed to curtail such abuse of the discovery tools.

## CONCLUSION

Every request in the Subpoena is defective. Requests 1 and 2 should be quashed so that @jimmysllama and @Kaidinn may be given the chance to assert their First Amendment rights against Fitzgibbon's attempts to unmask them. Request 3 should be quashed because Fitzgibbon cannot meet the First Amendment standard with respect to @DevinCow and because the information sought is irrelevant to the underlying litigation. Requests 4 and 5 should be quashed because they demand information that the SCA bars Twitter from disclosing and that must be sought first from Radack. And Request 6, as revised, should be quashed because it demands that Twitter produce information that must be sought first from Radack and that, once redacted, would have (at best) too little bearing on the underlying claims and counterclaims to warrant the burden that redaction would entail. The *Fitzgibbon* Litigation pertains solely to Radack's statements to and communications with third parties. As Fitzgibbon concedes, he has other avenues to obtain this information, including moving to compel Radack to comply with his discovery demands. His failure, or refusal, to exercise those options does not justify his fishing-expedition subpoena.

For these reasons and the reasons and authority contained in Twitter's Motion and Memorandum in Support of its Motion, Twitter respectfully requests the Court grant Twitter's Motion to Quash, award Twitter its fees and costs, and grant all other relief the Court finds appropriate.

Dated:  February 18, 2020　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 */s/ Patrick J. Carome*
　　　　　　　　　　　　　　　　　　　　　Charles K. Seyfarth (VSB No. 44530)
　　　　　　　　　　　　　　　　　　　　　Mary Grace Miller (VSB No. 86368)
　　　　　　　　　　　　　　　　　　　　　O'HAGAN MEYER
　　　　　　　　　　　　　　　　　　　　　411 East Franklin Street, Suite 500
　　　　　　　　　　　　　　　　　　　　　Richmond, Virginia 23219
　　　　　　　　　　　　　　　　　　　　　Telephone: (804) 403-7137
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (804) 403-7110
　　　　　　　　　　　　　　　　　　　　　Email: cseyfarth@ohaganmeyer.com
　　　　　　　　　　　　　　　　　　　　　Email: mgmiller@ohaganmeyer.com

　　　　　　　　　　　　　　　　　　　　　Patrick J. Carome (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　patrick.carome@wilmerhale.com
　　　　　　　　　　　　　　　　　　　　　Ari Holtzblatt (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　ari.holtzblatt@wilmerhale.com
　　　　　　　　　　　　　　　　　　　　　WILMER CUTLER PICKERING
　　　　　　　　　　　　　　　　　　　　　  HALE AND DORR LLP
　　　　　　　　　　　　　　　　　　　　　1875 Pennsylvania Avenue, NW
　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　　　　　　　　　　　　　Telephone:  (202) 663-6000
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (202) 663-6363

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, I electronically filed the foregoing (and accompanying Exhibit A) with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all registered counsel who have appeared in this proceeding and I have caused a copy of the same to be sent by email to counsel for Ms. Radack using the following email address: mthomas@thomaslawplc.com.


Dated: February 18, 2020                By:   /s/ Patrick J. Carome
                                              Patrick J. Carome

                                              *Attorney for Non-Party Twitter, Inc.*