UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| In Re Subpoena To Twitter, Inc. )<br>_____)<br>)<br>TREVOR FITZGIBBON,            )<br>)<br>Plaintiff,    )<br>)<br>vs.                           )<br>)<br>JESSELYN A. RADACK,           )<br>)<br>Defendant.    ) | Misc. Case No. 3:20mc00003<br><br>Civil Action No. 3:19-cv-477-REP |

**JESSELYN RADACK'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH AND OBJECTIONS TO SUBPOENA ISSUED BY TREVOR FITZGIBBON**

Jesselyn Radack ("Radack"), by special appearance of counsel, files this Motion to Quash and Objections to the subpoena that was issued to Twitter, Inc. (the "Subpoena") in connection with the lawsuit pending in the United States District Court for the Eastern District of Virginia, captioned *Fitzgibbon v. Radack,* 3:19-cv-00477-REP (the "Fitzgibbon Litigation").[1] The Subpoena at issue is defective for the numerous reasons stated in Twitter, Inc.'s ("Twitter") Memorandum in Support of Motion to Quash (Dkt. No. 2). Radack joins, adopts, and incorporates herein all of the arguments made in Twitter's Motion to Quash, and provides the following supplemental information for this Court's consideration:

---

[1] Radack disputes that the Eastern District of Virginia has personal or subject matter jurisdiction over the claims raised in the Fitzgibbon Litigation for the reasons set forth in Radack's Motions to Dismiss. A copy of Radack's Memorandum in Support of Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12 (b)(2) and Radack's Memorandum in Support of Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) are attached hereto as Exhibits 1 and 2, respectively. These Motions are fully briefed and awaiting decision by the Eastern District of Virginia Court.

1

> **I.       Fitzgibbon's attempt to unmask @DevinCow, @jimmysllama, and @Kaidinn is not only unlawful but is clearly sought for an improper purpose (Requests 1, 2, and 3).**

In addition to the fact that the Subpoena fails to satisfy the First Amendment standard as explained in Twitter's Motion to Quash, Fitzgibbon has failed to establish any connection between Radack and the Twitter handles at issue, the most egregious of which is @DevinCow. Over the past three years, Fitzgibbon has filed numerous lawsuits against Radack, a frivolous bar complaint, made unsubstantiated grievances to her employer, and published countless patently false, contrived, and sensationalized statements to the media about Radack. In not one of these statements, or in any of the pleadings filed in the six lawsuits concerning Radack which Fitzgibbon has either initiated or appeared in, has Fitzgibbon (or Radack) made a single reference to @DevinCow. *See Fitzgibbon v. Radack,* 3:18-cv-247-REP, United States District Court for the Eastern District of Virginia ("EDVA"); *Fitzgibbon v. Radack,* 3:19-cv-00477-REP, EDVA; *Fitzgibbon v. Institute for Public Accuracy* (Radack's employer), 3:19-cv-00102, EDVA; *In re: Jesselyn Radack,* 18-00634-SMT, United States Bankruptcy Court for the District of Columbia; *In re Jesselyn Radack,* Adv. Proc. No. 18-03095, United States Bankruptcy Court for the EDVA. The first reference by Fitzgibbon in any pleading to the @DevinCow account appears in Fitzgibbon's Opposition to Motion to Quash filed with this Court on February 10, 2020 (Dkt. No. 6).

In the discovery issued in the Fitzgibbon Litigation, Radack asked Fitzgibbon to identify any person with knowledge regarding the claims and defenses in the lawsuit. Again, Fitzgibbon did not mention @DevinCow. *See* Fitzgibbon's Response to Interrogatory No. 2 attached hereto as <u>Exhibit 3</u>. When asked by counsel for Twitter to provide a basis for the clearly improper Subpoena request, counsel for Fitzgibbon provided two Twitter screenshots of Radack exercising

her First Amendment right to comment on political satire.[2] *See* Carome Decl. Ex. P attached to Twitter's Motion to Quash.  Neither of the screenshots come close to establishing any connection between @DevinCow and the Fitzgibbon Litigation.[3]  As discussed in Twitter's Motion to Quash, it is pellucidly clear that Fitzgibbon's attempt to unmask @DevinCow in the instant litigation is for the improper purpose of obtaining discovery that counsel for Fitzgibbon has been unable to obtain in the wholly unrelated *Devin Nunes v. Twitter, @DevinCow, et al.,* CL19-1715-00 (Va. Cir. Ct. Henrico Cty) ("*Nunes*") lawsuit.  This demonstration of litigation gamesmanship and vexatious discovery abuse should be disallowed by this Court.

For similar reasons, the identifying information requested by Fitzgibbon concerning Twitter handles @jimmysllama and @Kaidinn should be disallowed.  Primarily, it appears that Fitzgibbon already knows who operates the @Kaidinn account because in discovery when Fitzgibbon was asked who has knowledge related to the claims in the Fitzgibbon Litigation, he responded by stating: "@Kaidinn a/k/a Lane Lipton. Ms. Lipton has knowledge of her communications with Radack and her conspiracy with Radack to defame Plaintiff." *See* Exh. 3.  This indicates that Fitzgibbon is already in possession of the information he is requesting.[4]

Second, Fitzgibbon's reference to these two Twitter handles in his Second Amended Complaint appears wholly arbitrary.  As explained in Radack's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Fitzgibbon has failed to sufficiently allege a conspiracy claim against Radack because the Second Amended Complaint

---

[2] Notably, one of the screenshots is of a tweet that was posted almost a year ago, on March 20, 2019, which is before the Fitzgibbon Litigation was even filed.  Fitzgibbon has filed three versions of his complaint in the Fitzgibbon Litigation and at no point has he ever alleged anything concerning this year-old tweet, or made any reference whatsoever to @DevinCow.
[3] In Fitzgibbon's Opposition to Twitter's Motion to Quash he cites a tweet by Radack listing all of the defamation lawsuits filed by counsel for Fitzgibbon, one of the lawsuits referenced is that of Devin Nunes against @DevinCow. Fitzgibbon's argument that a mere reference to the *Nunes* lawsuit establishes a conspiracy by Radack is yet another example of Fitzgibbon's distorted reality and conspiracy theories.
[4] It is also important to note that a current search of Twitter shows that this account no longer exists.

3

fails to set forth any factual basis that would lead to the conclusion that Radack has any connection whatsoever with these individuals. A copy of Radack's Memorandum in Support of Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) is attached hereto as Exhibit 4. As discussed *supra,* Radack has also moved to dismiss all of Fitzgibbon's claims on *two* other independent grounds, namely lack subject matter jurisdiction and lack of personal jurisdiction under Rules 12(b)(1) and 12(b)(2), respectively. *See* Exh. 1 and 2. The District Court for the Eastern District of Virginia has not yet determined that jurisdiction exists to adjudicate any of the claims in the Fitzgibbon Litigation, or that Fitzgibbon's Second Amended Complaint states a claim upon which relief can be granted. To the extent this Court does not quash Fitzgibbon's Subpoena due to the numerous and apparent deficiencies on its face, this Court should withhold ruling on the Subpoena until resolution of the three dispositive preliminary motions pending in the Fitzgibbon Litigation. All three of Radack's Motions to Dismiss are fully briefed and awaiting decision.[5] If Fitzgibbon's claims are dismissed in the Eastern District of Virginia, the issues before this Court will become moot.

Lastly, counsel for Fitzgibbon's attempt to end-run discovery in another case and purported attempt to "unmask" Twitter account holders who have no relation to the Fitzgibbon Litigation clearly demonstrates an improper motive, bad faith, and abuse of the subpoena power. Under Fed. R. Civ. P. 45, an attorney has the same authority to issue subpoenas as does the Clerk of Court. As an officer of the court, however, an attorney also has an "increased responsibility and liability for the misuse of this power." *Productos Mistolin, S.A. v. Mosquera,* 141 F.R.D. 226, 228 (D. P.R. 1992); *see also Highland Tank & Mfg. Co. v. PS Int'l, Inc.,* 227 F.R.D. 374, 380 (W.D. Pa. 2005). "[T]he injury resulting from attorney misuse of the subpoena power is not limited to the harm it

---

[5] Discovery does not close in the Fitzgibbon Litigation until May 8, 2020.

inflicts upon the parties. Rather misuse of the subpoena power also compromises the integrity of the court's processes." *Auto. Inspection Servs. v. Flint Auto Auction, Inc.,* No. 06-15100, 2007 U.S. Dist. LEXIS 83287, at *15 (E.D. Mich. Nov. 9, 2007) (citations omitted); *see also United States v. Santiago-Lugo,* 904 F. Supp. 43, 48 (D.P.R. 1995) (finding that "[t]he mere fact that an attorney abuses the subpoena power directly implicates the Court itself and causes an embarrassment to the institution"). Further, "[w]hen the power is misused, public confidence in the integrity of the judicial process is eroded." *Spender v. Steinman,* 179 F.R.D. 484, 489 (E.D. Pa. 1998).[6] For all of the foregoing reasons, the Court should quash Subpoena Requests 1, 2, and 3 and award Radack her attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

## II. The Stored Communications Act, Privacy Concerns, and Attorney-Client Privilege Implications All Favor Quashing the Subpoena (Requests 4 and 5).

Radack objects to the disclosure of her "address book contacts" and "[a]ll tweets, retweets, likes and replies published by Radack or @JesselynRadack between March 31, 2019 and December 10, 2019 that mention Plaintiff or contain the words 'rapist', 'predator', 'serial', 'stalk' and 'threathen.'" *See* Subpoena Request Nos. 4 and 5. Primarily, the production of such information is a violation of federal Stored Communications Act ("SCA") as explained in Twitter's Motion to Quash which is incorporated herein. Second, even assuming *arguendo* that there is any probative value to be gained from disclosure of all of Radack's address book contacts, it would be outweighed by the substantial privacy concerns. The production of all of Radack's contacts, which

---

[6] According to a recent article written by the Fresno Bee, in January of this year two people filed complaints with the Virginia Bar against counsel for Fitzgibbon. *See* <u>Exhibit 5</u> attached hereto. The article states that one of the complainants alleged that counsel for Fitzgibbon "harassed him with a threatening letter and with a subpoena for his social media activity through a lawsuit with which he has no clear connection." *Id.* Although likely, it is uncertain whether the complainant is one of the Twitter account holders referenced in the Subpoena in the instant case. However, all Twitter account holders referenced in the Subpoena should be afforded the opportunity to file a response in this Court to the Subpoena.

5

could potentially include her former, current, and prospective clients, family members, and treating physicians, has no relevance to the claims asserted in the Fitzgibbon Litigation, thus no protective order would ever be sufficient to ameliorate Radack's privacy concerns with respect to disclosure of this information.

Federal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, even though the information requested by the subpoena is not subject to a federal evidentiary privilege. *See Alig-Mielcarek v. Jackson,* 286 F.R.D. 521, 526-27 (N.D. Ga. 2012) (quashing a plaintiff's request for nonparty educational records based in part on the privacy rights protected by the Family Educational Rights and Privacy Act of 1974, which "does not provide a privilege preventing disclosure of student records, [but nevertheless] seeks to protect the confidentiality of educational records"); *McGehee v. Tex. Dep't of Crim. Justice,* No. H-18-1546, 2018 U.S. Dist. LEXIS 141924, *29 (S.D. Tx. Aug. 21, 2018) (noting that the Texas statute exempting lethal injection drug supplier information from the requirements of a state Public Information Act "exhibits a democratically manifested intent not to disclose the source of Texas' lethal injection drugs" which, though it does not give rise to a federal evidentiary privilege, should not be ignored). *See also Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (affirming refusal to allow discovery of state parole records, which are not subject to a federal evidentiary privilege, based in part on confidentiality considerations); *McGoy v. Ray*, 164 F. App'x 876, 878 (11th Cir. 2006) (holding that the district court did not abuse its discretion when it found that the facts asserted by the plaintiff were insufficient to compel discovery of confidential parole records, which were designated a confidential state secret by state statute). Similarly, in the instant case overriding privacy concerns weigh against disclosure of the requested information.

The attorney-client privilege also protects disclosure of Radack's contacts. Radack is an attorney and the disclosure of her contact list, which may include potential and/or current clients who have contacted Radack for legal advice is privileged. Although the identification of a client is not usually considered privileged, an exception exists which recognizes a privilege if revelation of a client's identity would also reveal a privileged communication. *In re Grand Jury Subpoena (Under Seal),* 774 F.2d 624, 628 (4th Cir. 1985) (citations omitted); *DeGuerin v. United States,* 214 F. Supp. 2d 726, 737 (S.D. Tx. 2002) ("In one specific application of these principles, because a client's confidential purpose for seeking legal advice may be privileged . . . a client's identity may be protected from disclosure if its revelation will also reveal the confidential purpose for which the client sought legal advice). Courts have also held that whether the client's identity is privileged depends on the facts of each case. *See Baird v. Koerner,* 279 F.2d 623, 631 (9th Cir. 1960) (holding that no federal body of law requires the exclusion of the identity of the client from the extent of the attorney-client privilege, it must be assessed on a case to case basis, depending on the particular facts of each case). Radack's legal practice is solely dedicated to the niche area of whistleblower law, a hallmark of whistleblower protection laws is anonymity. Disclosure of her contact list could potentially implicate government employees who have contacted her for legal advice regarding their desire to blow the whistle. Additionally, disclosure of the addresses of her former, current, or prospective clients could potentially compromise their anonymity and endanger certain clients by revealing their undisclosed locations. Thus, Radack's address book contacts fall within the noted exception to the general rule.

To the extent, Fitzgibbon is also requesting communications between Radack and @McClellanKM and @Thomas_Drake1, such communications would also fall squarely within

the protections of the attorney-client privilege.[7] Kathleen McClellan is Radack's law partner who she communicates with regarding client cases and Thomas Drake is a former client of Radack who periodically contacts Radack regarding inquiries on legal matters. *See Hope for Families & Cmty. Serv. v. Warren,* No. 3:06-cv-1113, 2009 U.S. Dist. LEXIS 5253, at *106-107 (M.D. Al. Jan. 26, 2009) ("Communications between lawyers in the same firm regarding their clients are clearly protected by attorney-client privilege); *Nesse v. Pittman,* 202 F.R.D. 344, 354 (D.D.C. 2001) ("The attorney-client privilege and the cognate ethical prohibition against revealing a former client's confidences advances the societal interest in effective legal counseling and advocacy by encouraging clients to be as candid as possible with their client"). In light of the SCA, privacy concerns, and attorney-client privilege implications of the requested disclosure this Court should quash Requests 4 and 5 of the Subpoena.

### III. All of the Subpoena Requests are Overbroad and Irrelevant to the Claims at Issue in the Fitzgibbon Litigation (Requests 1, 2, 3, 4, 5 and 6).

As explained by the Eastern District of Virginia Court in *Singletary v. Sterling Transp. Co.,* 289 F.R.D. 237, *9-10 (2012):

> Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26. *Cook v. Howard,* No. 11-1601, 484 Fed. Appx. 805, 2012 U.S. App. LEXIS 18053, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012) (per curiam) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."); *see also Barrington*, 2007 U.S. Dist. LEXIS 90555, 2007 WL 4370647, at *3 (collecting cases). Thus . . . the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule 26(b). Rule 26(b) limits the scope of discovery to those materials that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial, but it must

---

[7] It is unclear whether Fitzgibbon is requesting communications with Twitter accounts @McClellanKM and @Thomas_Drake1 because although they are listed in the section entitled "Definitions" on pages 7-8 of the Subpoena, the specific Subpoena requests do not mention these Twitter accounts. However, it is clear that none of these accounts are referenced in the operative pleadings and there is no basis to suggest that communications between Radack and any of these accounts have any connection to Fitzgibbon's claims.

8

appear to be "reasonably calculated to lead to the discovery of admissible evidence." Id. Notably, the Court "must limit the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.* at 26(b)(2)(C). As such, the Court may quash a subpoena duces tecum as overbroad if it "does not limit the [documents] requested to those containing subject matter relevant to the underlying action." *In re Subpoena Duces Tecum to AOL LLC,* 550 F. Supp. 2d 606, 612 (E.D. Va. 2008); *see also Sirpal v. Fengrong Wang*, No. WDQ-12-0365, 2012 U.S. Dist. LEXIS 97145, at *5 (D. Md. July 12, 2012)

Thus, regardless of whether this Court considers the Subpoena under Fed. R. Civ. P. 45 or 26, the Court must determine whether the requested information is relevant to the Fitzgibbon Litigation. The Subpoena at issue seeks account opening information for three accounts, @DevinCow which is not mentioned in the pleadings or Fitzgibbon's discovery responses, and @jimmysllama and @Kaidinn who Plaintiff conclusory alleges in his Second Amended Complaint have conspired with Radack to defame him. Fitzgibbon has not set forth any facts or evidence to establish that Radack even knows these three account holders (outside of posts which may have appeared on Twitter), much less conspired with them. The revised Subpoena also requests communications between Radack and arbitrarily listed Twitter handles with all "content" redacted, to the extent any such information exists it would be both useless and irrelevant to the Fitzgibbon Litigation. Whether or not Radack communicated with someone on Twitter has no probative value. It is clear that the underlying rationale for this Subpoena is to subject Radack to further oppression, undue burden, and expense based upon Fitzgibbon's conspiracy theory, which has no basis in fact or reality, that every time anyone posts anything on Twitter criticizing Fitzgibbon that it is somehow linked to Radack.[8] No legitimate basis has been advanced by Fitzgibbon supporting

---

[8] Fitzgibbon's Opposition to Twitter's Motion to Quash further illustrates his erroneous belief that whenever third-parties post anything on Twitter concerning Fitzgibbon it is a part of a "national and intentional smear campaign against Trevor Fitzgibbon" orchestrated by Radack, despite the lack of any evidentiary support.

disclosure of any the of information requested in the Subpoena, and therefore the Subpoena should be quashed.

WHEREFORE, Jesselyn Radack respectfully requests that the Court grant the instant Motion, award Radack her attorney's fees, costs, and such other and further relief as the Court deems proper.

Dated this 19th day of February, 2020

    /s/  D. Margeaux Thomas
D. Margeaux Thomas (VSB #75582)
The Thomas Law Office PLC
11130 Fairfax Blvd., Suite 200-G
Fairfax, VA 22030
Telephone: 703.957.2577
Facsimile: 703.957.2578
Email: mthomas@thomaslawplc.com
*Counsel for Jesselyn A. Radack*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2020, a copy of the foregoing document was filed with the Court electronically.  Notice of this filing will be sent automatically by the Court's CM/ECF system to the following parties:

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA 22903
*Counsel for Plaintiff*

Charles K. Seyfarth
Mary Grace Miller
O'HAGAN MEYER
411 East Franklin St, Suite 500
Richmond, Virginia 23219

Patrick J. Carome
Ari Holtzblatt
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Non-Party Twitter, Inc.*

　　　　　　　　　　　　　　　　　　　　　　/s/  D. Margeaux Thomas
　　　　　　　　　　　　　　　　　　　　　　D. Margeaux Thomas (VSB #75582)